217 F.2d 649
 Melvin YONACK, Trustee in Bankruptcy of James Lester Pallett and Ruby Jewell Pallett, Operating as Lucky Liquor Stores, Bankrupts, Appellant,
v.
INTERSTATE SECURITIES COMPANY OF TEXAS, Appellee.
 No. 15008.
 United States Court of Appeals Fifth Circuit.
 December 22, 1954.
 Rehearing Denied January 17, 1955.
 
 Wm. Madden Hill, Dallas, Tex., for appellant.
 Herbert S. Bonney, Jr., Dallas, Tex., Bonney, Paxton & Wade, Dallas, Tex., of counsel, for appellee.
 Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and ALLRED, District Judge.
 HUTCHESON, Chief Judge.
 
 
 1
 Claiming that it had succeeded to the rights of the Grand Avenue State Bank, the owner and holder of a chattel mortgage on a Lincoln Sedan, which the trustee had sold, appellee, claimant below, filed a secured claim upon the proceeds for the recovery of the amount due under the mortgage.[1]
 
 
 2
 The trustee, opposing the claim on the ground that the claimant having paid off the bank and thereby having discharged instead of having purchased the bank's lien, and the bank having, instead of transferring its lien to claimant, discharged it by the release noted on the certificate, insisted successfully before the referee that the claimant's case for a secured lien failed.
 
 
 3
 The referee, treating the claim as one for a new lien on the car as a result of the contemplated sale from the bankrupt to Dodson, and finding, as of course was the case, that the sale had not been, and could not be, consummated, and further finding that the bank's lien had been extinguished and the claimant could not assert it, refused to allow the filing of the claim.
 
 
 4
 The district judge, upon a review of the referee's order, sustained the claimant's contention that under the undisputed facts there had been no extinguishment of the bank's lien and that claimant had acquired, and was entitled to enforce it against the proceeds. He, therefore, reversed the order of the referee with directions to allow the claim for the amount of the debt to the bank, less credits for payments made to claimant on the debt since it had acquired it.
 
 
 5
 Appealing from this order, the trustee is here insisting that the referee was right, the district judge wrong.
 
 
 6
 The trustee, arguing the case here, as he did below, as though claimant is endeavoring to assert and enforce a new lien arising out of the intended sale from Pallett to Dodson, cites as against the existence of such a lien the provisions of the Certificate of Title Act of Texas, Art. 1436-1, Vernon's Annotated Penal Code, and Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185. In addition, he insists that under the facts appellee is a mere volunteer as to the bank's lien and that having paid the bank off instead of taking an assignment, the bank's lien is extinguished and claimant is not in a position to claim subrogation to the lien.
 
 
 7
 Urging that upon the facts the intention on the part of the bank to transfer and on the part of the claimant to receive the bank's rights in its lien, was completely absent, and that such intention is a necessity to an equitable assignment and to a subrogation, he insists that the case fails.
 
 
 8
 Appellee, replying to appellant's contentions, points out, first, that its claim is not based at all upon the idea or theory that it has acquired and is asserting a new lien arising out of the sale from Pallett to Dodson, and that the statute and decisions cited by appellant on the theory that the Title Certificate Law of Texas has not been complied with, are therefore not applicable; and, second, that its claim is for subrogation and that subrogation is one of the purest of equitable remedies. So pointing, it insists that it is settled law that equity will not permit one who, under the circumstances of this case, has paid a lien holder the amount of his lien to lose the protection of the lien by its extinguishment; but that, on the contrary, it will preserve, or if necessary, revive the lien to protect appellee where, as here, unjust enrichment will result to the creditors of the bankrupt at the expense of appellee and it would, therefore, be inequitable not to do so.
 
 
 9
 We find ourselves in full agreement with appellee. Subrogation is perhaps the purest of equities. It is applicable in cases where the party invoking it has, without being a volunteer, paid a debt for which another is primarily answerable, and which in equity and good conscience that other ought to pay. Subrogation is typically allowed when not to allow it will result in an unjust enrichment. It is an equity of need and as such it was available to the claimant when as a part of the financing which it undertook, not as a volunteer but at the request of the interested parties, it paid the bank and then found itself unable to go on with the new papers and take the new lien.
 
 
 10
 The following quotations from 50 American Jurisprudence, "Subrogation", graphically show the sweep and beneficial effect of the doctrine:
 
 
 11
 "Sec. 2. Definitions. — Subrogation, frequently referred to as the `doctrine of substitution', may be broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right. It is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it. * * *"
 
 
 12
 "Sec. 6 — Nature and Purpose. — Subrogation is a creature of equity, having for its purpose the working out of an equitable adjustment and the doing of complete and perfect justice between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it, and preventing the sweeping away of the fund from which in good conscience the creditor ought to be paid. * * *"
 
 
 13
 "Sec. 14 — Maxims Applicable. — The various maxims of equity, elsewhere considered, are brought into play when subrogation is sought. It frequently calls for an application of the maxim that `no one shall be enriched by another's loss.' * * *"
 
 
 14
 "Section 15. Favored Doctrine. — As observed above, the doctrine of subrogation, which in its beginning was somewhat strictly and narrowly applied, was later liberalized and expanded and came to be recognized as a wholesome and highly meritorious doctrine. Being founded on principles of natural reason and justice, and being one of the benevolences of the law, it is a highly favored doctrine and one which has been most liberally dealt with in the courts. Perhaps no doctrine of equity jurisprudence is more beneficent in its operation, and perhaps none stands in higher favor."
 
 
 15
 This court, in Stowers v. Wheat, 5 Cir., 78 F.2d 25, 27 and Texas Company v. Miller, 5 Cir., 165 F.2d 111, has fully discussed and given wide application to the doctrine. The courts of Texas have been peculiarly hospitable to the right of subrogation and have been in the forefront in upholding the right to it. In Faires v. Cockerell, 88 Tex. 428, 31 S.W. 190, 194, 639, 28 L.R.A. 528, Judge Brown declared:
 
 
 16
 "Perhaps the courts of no state have gone further in applying the doctrine of subrogation than has the court of this state,"
 
 
 17
 and later decisions have followed this lead.
 
 
 18
 The judgment was right. It is affirmed.
 
 
 
 Notes:
 
 
 [1]
 As the undisputed evidence presents them, these are the facts:
 The certificate of title, a photostat of which was attached to the proof of debt filed by claimant, was regularly issued by the State Highway Department of Texas June 6, 1953. It shows that the automobile was sold by Dick Jones Motor Co. to the bankrupt, S. A. Pallett, and that noted thereon is a lien of $2655.00 in favor of the Grand Avenue State Bank of Dallas. It properly described the automobile and vested title in Pallett subject to the bank's lien.
 On its reverse side there appears a release of the lien of the Grand Avenue State Bank, signed July 1, 1953, by one of the bank's officers and under the circumstances following: Just prior to the filing of the petition in bankruptcy, the bankrupt had agreed to sell the car to one Dodson, subject to a new lien to be created, and, in order to put the transaction through, Dodson had made credit arrangements with claimant. Pursuant to and as a first step in the financing, claimant had paid the bank the amount of its lien as recorded on the Texas Title Certificate. The bank, however, did not make an assignment or transfer of its lien but instead executed the standard form of release on the back of the certificate and delivered it to the claimant which has retained it in its office and as a part of its files ever since.
 Transfer of title to the automobile from Pallett to Dodson and the creation and recording of a new lien in favor of claimant for a sum in excess of the bank's lien was not accomplished prior to the adjudication in bankruptcy of Pallett, and, therefore, no effort was made to transfer the certificate with the release of the bank noted on it, nor was any made to apply to the Highway Department for a new certificate subject to a new lien or to otherwise put through the Pallett Dodson sale. On the contrary, when claimant ascertained that the proposed sale from Pallett to Dodson could not be effectuated because of Pallett's bankruptcy, claimant retained all of the papers and relying on its position as assignee of, and subrogee to, the bank's lien, filed its claim not for the amount of the proposed new lien or on the basis that a sale had been made to Dodson and a new lien had arisen therefrom, but entirely on the basis that having paid the bank and secured the certificate of title from it, it had succeeded to the right of the bank in the car and its proceeds.