GENERAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,

v.

COMMODITY CREDIT CORPORATION and the United States of America, Defendants-Appellants.

No. 326-69.

United States Court of Appeals, Tenth Circuit.

Aug. 24, 1970.

Herbert A. Marshall, Topeka, Kan. (Marshall, Hawks, McKinney & Hundley, Topeka, Kan., were with him on the brief) for plaintiff-appellee.

Charles D. McAtee, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., and Patrick J. Hurley, Atty., U. S. Dept. of Agriculture, were with him on the brief) for defendants-appellants.

Before PHILLIPS, BREITENSTEIN, and HILL, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an interpleader action brought by General Insurance Company of Amer-

ica, which conceded its liability on a 1965–1966 warehouse bond. Commodity Credit Corporation counterclaimed and asserted that the surety was also liable on a 1964–1965 bond. The district court allowed recovery on the latter bond for warehouse charges only, and CCC has appealed.

J. A. Mall, a Kansas warehouseman, executed a Uniform Grain Storage Agreement (the agreement) with CCC and carried public warehouse bonds with General Insurance as surety. We are concerned with two bonds. Bond A covered the period October 1, 1964, to September 30, 1965. Bond B covered the next year. Mall brought bankruptcy proceedings on September 26, 1966, and a receiver was appointed. The surety filed an interpleader against CCC and other grain depositors and paid into court the amount of Bond B. When it became apparent that the deposit would not satisfy all claims, CCC counterclaimed, asserting that it could recover its total claim against Bond A as well. In so doing, it conceded that its recovery from both bonds could not exceed its total claim. Like the other depositors, CCC received its pro rata share of the proceeds of Bond B. Its counterclaim, however, was denied for the most part. Although the district court found that Mall was in a short position at all times after June 30, 1965, and allowed CCC to recover $10,036.42 of unearned storage charges, it denied recovery for any quantity claim on the basis of Hartford Accident & Indemnity Co. v. State of Kansas, 10 Cir., 247 F.2d 315.

After the proceeds of Bond B were distributed by court order, the court held that the surety was liable for $3,600 interest on the amount of Bond B. There was no appeal from this order, and apparently the money was paid into the registry of the court. Later the surety moved for the allowance of attorneys' fees and expenses. The court, over the objection of CCC, granted the motion in the sum of $1,566.40 and ordered payment thereof from the amount held in the court registry. The appeal

of CCC from this order, our Docket No. 552–69, 430 F.2d 919, is disposed of by a separate opinion.

Our concern is with the surety's liability under Bond A for CCC's quantity shortage. The district court found that on the termination date of that bond the warehouse receipts of CCC covered 536,518 bushels out of a total storage obligation of 641,577 bushels, and that the shortage was 161,651 bushels. On a proportionate basis, the quantity deficiency as to CCC at that time exceeded that portion of its total claim not satisfied by its pro rata share of Bond B proceeds. Thus, if the surety is liable under Bond A, recovery by CCC of the unsatisfied portion of its claim will not produce a windfall.

The obligation of the bond is that "the said Principal [Mall] shall well and faithfully perform all of his duties as such Public Warehouseman, during said licensed period." Section 34–229, K.S.A. provides that a warehouseman's bond

"shall be in favor of the state of Kansas for the benefit of all persons interested * * * conditioned for the faithful performance of all his duties as such public warehouseman, and of such additional obligations as may be assumed by the warehouseman under contracts with a federal agency relating to the storage of grain in each warehouse."

■ The agreement is a contract "with a federal agency relating to the storage of grain." Because the surety's liability is defined by statute, regardless of the provisions of the bond, see e.g. Farmer v. Rutherford, 136 Kan. 298, 15 P.2d 474, the surety was liable for Mall's failure to perform faithfully any of the obligations imposed on him by the agreement.

Paragraph 7(a) of the agreement requires the warehouseman to maintain at all times an amount of grain equivalent in quantity, class, and grade to his obligations to all depositors. Mall was in default of this duty at all times between July 1, and September 30, 1965, because

the warehouse was in a short position. The district court held that the shortage was a breach by Mall of his duties as a public warehouseman for which his surety was liable but denied recovery for the quantity shortage because of the statement in Hartford Accident & Indemnity Co., v. State of Kansas, supra, that a conversion of grain stored in a warehouse does not occur until a demand for grain goes unsatisfied.

In Hartford there were several bonds covering succeeding annual terms and, in the case of the final year, an additional bond was furnished on demand of CCC. The court allowed recovery against the surety for quantity claims on the last two bonds but on previous bonds allowed recovery only for quality deficiencies resulting from negligence. The court held that conversion occurred when there was an unsatisfied demand, the necessity for which ceased upon the appointment of a receiver. Apparently no claims were asserted for quantity shortages under the earlier bonds. The problem is not discussed in the Hartford opinion. The allowance in Hartford of the quality deficiencies is somewhat comparable to the allowance in this case of the unearned storage charges.

In the format of Hartford it made no difference whether the liability was based on a theory of conversion or on a theory of violation of the statute and agreement. The result would be the same because Hartford treats only quantity shortages during the lives of bonds in force when the shortages were discovered.

■ We have held that under Kansas law the relationship among depositors of grain in a warehouse is that of tenants in common, that the relationship between them and the warehouseman is that of bailor and bailee, and that the right of the warehouseman to dispose of the common mass is limited to the excess over his commitments to the depositors. Central States Corp. v. Luther, 10 Cir., 215 F.2d 38, 45, cert. denied 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743. During the life of Bond A, Mall had violated both the Kansas law and the obligation of the bond by disposing of grain in quantities which rendered him unable to satisfy his commitments to the depositors of grain.

■ We believe that in such circumstances the liability of the warehouseman and his surety is keyed to the statutes and the agreement rather than to the elements of the common law tort of conversion. The statute was violated, the agreement was breached, and the obligation of the bond was broken. These facts created a cause of action on Bond A without regard to the law of conversion. The appointment of the receiver, which is equivalent to an unsatisfied demand for delivery of grain, is important only as it relates to the discovery of the misconduct. The dicta in the Hartford decision, upon which the surety relies, is not controlling in the case at bar.

The decision in Millers Mutual Fire Insurance Company of Texas v. Farmers Elevator Mutual Insurance Company, 5 Cir., 408 F.2d 776, is not contrary to the result which we reach. There a pre-existing shortage had been corrected on the effective date of the bond and insurance policy in controversy. Here the shortage began under Bond A and continued through the remainder of the term of that bond and all of the term of Bond B.

On the record before us no one is asserting a claim under Bond A except CCC. We deem it unnecessary to enter into any discussion of the times and amounts of the continuing shortages or of any possible prorationing theories. The fact is that CCC did not recover the full amount of its quantity loss from Bond B. In our opinion CCC is entitled to payment under Bond A of the unrecovered balance.

■ The remaining question goes to the bushel value of the grain. CCC insists that it is entitled to $1.94 a bushel, the highest price during the period of the shortage. The surety says that the controlling price is $1.67 per bushel, the price on the day of the appointment of

the receiver. Because the interpleaded bond was insufficient to cover the claims even if they were valued at $1.67 per bushel and because of the disallowance of CCC's counterclaim, the district court did not rule on which of the two values should be used.

We believe that the correct rule is found is Restatement, Restitution, § 151, comment (c), which permits recovery of the highest value reached by the subject matter within a reasonable time after the tortious conduct if the injured party "can prove that he probably would have made a sale while the subject matter was at its highest point in value." CCC made no effort to prove that it made, or would have made, any effort to sell the grain for which recovery is sought at any time between the inception of the shortage and the receivership. Absent such proof, the value at the time of receivership controls.

Reversed and remanded for allowance of damages in accordance with this opinion.