ANNA A. O'BRIEN & others *vs.* JOHN P. READY & others.

Hampden. February 2, 1954. — March 5, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Insurance,* Motor vehicle liability insurance, What insurer liable. *Estoppel.*

Under a Massachusetts motor vehicle liability insurance policy providing that "no coverage" was "extended" while the motor vehicle to which the policy applied was being operated in certain circumstances existent at a time when it was involved in a collision on a public way in Massachusetts resulting in judgments for personal injuries and a judgment for property damage against the insured, the insurer could be held by the judgment creditors only to the extent of the compulsory coverage under the policy and so could not be held for the judgment for property damage or for excess over $5,000 of one of the judgments for personal injuries. [207–208]

A motor vehicle liability insurance policy issued to a motor carrier covering "all equipment . . . hired by the named insured, only when . . . [it] is being operated in the interest of the named insured" and including as an unnamed insured "any person while using" the equipment "with the permission of the named insured" was applicable to judgments recovered by the occupants of an automobile for injuries sustained in a collision between it and a motor truck which had been leased to the carrier and at the time of the collision was being operated by the judgment debtor, a driver furnished by the lessor, and was transporting cargo contracted for by the carrier, irrespective of whether the driver was an agent of the carrier or of the lessor. [208–209]

Where a motor truck leased to a motor carrier was covered by a Massachusetts motor vehicle liability insurance policy issued to the owner-lessor under which in the circumstances the insurer would be entitled to reimbursement from the insured for any payments the insurer was obligated to make under the compulsory coverage, and was also covered by a "national standard automobile liability policy" issued to the lessee applicable to equipment hired by him while "operated in . . . [his] interest" and including as unnamed insureds the owner-lessor and an operator furnished to the lessee with the truck, and where judgments were recovered against the operator and the owner-lessor for personal injuries covered by the compulsory coverage of the owner-lessor's Massachusetts policy and arising from the operation of the truck in the carriage of cargo contracted for by the lessee, it was equitable in a suit by the judgment creditors against the operator,

the owner-lessor, the lessee, and both insurers to order the insurer under the lessee's policy to pay the judgments, notwithstanding that no actions were brought against the lessee and that the lessee's insurance was described in his policy as "excess insurance over any other valid and collectible insurance available to the insured." [209]

In the circumstances of a leasing to a motor carrier of a motor truck covered both by a Massachusetts motor vehicle liability insurance policy issued to the owner-lessor and a "national standard automobile liability policy" issued to the lessee, the fact that the insurer under the Massachusetts policy, without disclaimer of liability or reservation of rights, defended actions for personal injuries against the operator of the truck and the owner-lessor which might give rise to liability of that insurer under the compulsory coverage of the Massachusetts policy did not estop that insurer from subsequently contending that equitably the insurer under the lessee's policy ought to pay judgments for the plaintiffs in such actions. [210]

BILL IN EQUITY, filed in the Superior Court on November 17, 1950.

The suit was heard by *O'Brien*, J.

In this court the case was submitted on briefs.

*Frederick S. Pillsbury*, for the defendant The Travelers Insurance Company.

*Earl H. Wright*, for the defendants Midstates Freight Lines, Inc., and another.

WILKINS, J. The amended bill in equity seeks to reach and apply in satisfaction of judgments in tort the alleged obligations of the defendant The Travelers Insurance Company and of the defendant American Fidelity and Casualty Company, Incorporated, under policies of automobile liability insurance issued by them respectively to the defendant Denman Transportation Company and to the defendant Midstates Freight Lines, Inc. G. L. (Ter. Ed.) c. 175, § 113, and c. 214, § 3 (10). The issues concern the extent of the liability of each insurance company.

Many facts were agreed. On December 17, 1948, the four plaintiffs were injured in a collision between an automobile carrying them and a tractor and trailer owned and registered in this Commonwealth by Denman and operated by the defendant Ready on a public highway in Springfield. The tractor and trailer were in the course of operation by Midstates, under a lease from Denman, in interstate com-

merce between Chicago and Boston. Midstates had contracted for the cargo and was being paid on a time and route schedule it prescribed. Along with the leased equipment, Midstates acquired the services of an operator, the defendant Ready. By agreement with Denman, Midstates paid Ready his wages and forwarded the balance of the agreed rental to Denman. For damages due to the collision, these tort actions were brought in the Superior Court, Hampden County, and resulted in verdicts for the plaintiffs: Anna A. O'Brien, one against Denman and another against Ready, for personal injuries; Bertha Mruk and Roy Delisle, each against Ready for personal injuries; Edward S. Rusiecki against Ready, one for personal injuries and another for property damage.[1] No action was brought against Midstates, and the only action against Denman was by O'Brien. Travelers appeared, answered, and defended all the actions under "Coverage A" of its policy with Denman.

In his findings and order for decree the judge stated: "I find as a fact and rule as a matter of law . . . that the obligation to satisfy the several judgments rests upon The Travelers Insurance Company in the respective amounts stated in the stipulation plus interest to be computed as in an action at law." From a final decree ordering such payments, Travelers appealed. The evidence is reported.

The lease provided that "the lessee shall maintain in its name such policies of public liability, property damage, cargo, collision and workmen's compensation insurance as may be required by law or by the lessee deemed necessary or advisable incident to the operation of said vehicle hereunder. . . . [D]uring the operative period of this lease, the lessee shall exercise absolute control of the vehicle subject thereto . . .."

Travelers issued a "Massachusetts motor vehicle policy" specifically covering the tractor and trailer and several

---

[1] The record indicates that there were two executions, but the point has not been argued that this plaintiff had two judgments and only one cause of action. See *Dearden* v. *Hey*, 304 Mass. 659.

more vehicles for compulsory and other insurance. The named insured is Denman. Ready is an unnamed insured.

American issued a "national standard automobile liability policy" covering a large enumerated fleet of vehicles as well as hired equipment. There is a "gross receipts endorsement" reading: "In consideration of a premium paid by the insured after being computed at a rate of $4.25 per $100 of gross receipts . . . the protection afforded by the policy . . . is extended to cover all equipment owned and hired by the named insured, only when such owned and hired equipment is being operated in the interest of the named insured [Midstates]." Denman and Ready are embraced within this provision: "The unqualified word 'insured' . . . also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured."

Each policy has limits, both for personal injuries and property damage, in excess of the total of the executions. Ultimate decision must turn upon the effect of other provisions of the respective policies.

Rightly, no contention has been made that Travelers is not liable as against the plaintiffs for the judgments under "Coverage A." The duty to carry the compulsory insurance was upon Denman, the registered owner. *Rose* v. *Franklin Surety Co.* 281 Mass. 538, 540–541. *Wheeler* v. *O'Connell*, 297 Mass. 549, 553. *Service Mutual Liability Ins. Co.* v. *Aronofsky*, 308 Mass. 249, 252. *Kenner* v. *Century Indemnity Co.* 320 Mass. 6, 9. G. L. (Ter. Ed.) c. 90, § 34A, as amended; c. 175, § 113A, as amended.

The Travelers policy carries the indorsement: "It is agreed that no coverage is extended under the policy while the described automobile is being operated under any I.C.C. permit, other than I.C.C. permit issued in the name of the named insured." There was undisputed evidence, and we find, that Denman had no interstate commerce commission permit for operation between Boston and Chi-

cago, and that Midstates did have such a permit. Mid-states seems to argue that all testimony as to its own permit was struck out, but careful reading of the record discloses that the only testimony struck out was that "the truck was being operated under the permit of the Mid-States Freight Lines, Inc." It nevertheless seems to us to be a necessary inference, which we draw, that the tractor and trailer were in operation under the permit of Midstates, which was the only existing permit on the evidence. The alternative would be that there was no carrier permit [1] and that the act of transportation was in violation of the inter-state commerce act, U. S. C. (1946 ed.) Title 49, §§ 303, 309. There is a presumption in favor of lawful operation. *Doherty* v. *Ayer*, 197 Mass. 241, 247–248. *Moroni* v. *Brawders*, 317 Mass. 48, 52–53. *Epstein* v. *Boston Housing Authority*, 317 Mass. 297, 301. *Kissell* v. *Motor Age Transit Lines, Inc.* 357 Pa. 204, 208–209.

The consequence is that the plaintiffs can hold Travelers for no more than the amount of the compulsory insurance. *Kenner* v. *Century Indemnity Co.* 320 Mass. 6, 10, 13. This means that the judgment for property damage and the excess of the O'Brien judgment over $5,000 are not charge-able against Travelers.[2] See *Potter* v. *Great American Indemnity Co.* 316 Mass. 155, 157; *Lodge* v. *Bern*, 328 Mass. 42, 46.

We next consider whether the excess of the O'Brien judgment [3] over $5,000 and the judgment for property damage can be charged against American in this suit. We think that they can. This question has nothing to do with whether Ready was an agent of Midstates in the technical

---

[1] We forbear to rely upon the confused language of paragraph 10 of the stipulation, which is: "That the records of the defendant, Mid-States Freight Lines, Inc., as to whose Interstate Commerce Commission (I.C.C.) permit under which the said tractor and trailer were being operated at the time of said accident were destroyed by fire and are no longer available."

[2] The amounts of the judgments were: (1) Against Ready. (a) Personal injuries. O'Brien $6,049.50, Rusiecki $607.20, Mruk $2,638.55, Delisle $176.10, Total $9,471.35. (b) Property damage, Rusiecki $544.15. (2) Against Denman. Personal injuries. O'Brien $6,108.50.

[3] Since she can have but one satisfaction, we shall refer to her two judgments as though that in the larger amount were the only one.

sense, or whether the jury must have found Ready was the agent of Denman. It is a matter of the interpretation and effect of the lease and the policies of insurance. At the time of the accident Midstates was the contract carrier under the interstate commerce act. The equipment was "being operated in the interest of the named insured," which Midstates was. American's policy, therefore, cannot be a dead letter and must apply at least to the extent that there is no coverage by Travelers.

At this point we reach an argument of Travelers based on "Coverage A" (2), where we read: "The terms of this policy shall remain in full force and effect, however, as binding between the insured and the company, and the insured agrees to reimburse the company . . . for any payment the company would not have been obligated to make if the terms of this policy applicable to Coverage B were also applicable to this coverage." Travelers contends that as it is not obligated to make any payment under "Coverage B," it is entitled to reimbursement from the insured for payments it is obligated to make to the plaintiffs under "Coverage A." It seems to us that this must be true, and that Travelers would be entitled to reimbursement from Denman for payments it might make under "Coverage A." See *Bennett* v. *Preferred Accident Ins. Co.* 192 Fed. (2d) 748 (C. A. 10). But as these payments have not yet been made and Denman and Ready are unnamed insureds under the American policy, it is equitable to order American to pay the judgments in this suit. We are unable to perceive that the excess insurance provisions[1] of the American policy have any application.

The absence of actions by the plaintiffs against Midstates is not a valid objection. Everybody interested, including

---

[1] "Other insurance. The insurance shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the non-owned automobile or otherwise, against a loss covered hereunder." "[S]hould any other like, valid and collectible insurance issued in the name of the owner or lessor, or in favor of the named insured herein, exist, this policy becomes excess over and above such valid and collectible insurance."

the insurance companies and their insureds, are parties to this suit. The documents containing the undertakings of the insurance companies are before us. The facts are known. There is no reason why equity should not adjudge ultimate liability now.

It is unimportant that Travelers did not disclaim liability and defended the cases without reservation of rights. There was no valid ground for disclaimer. Travelers was liable under "Coverage A" anyway. What this suit seeks is a just result between insurers while finally disposing of all the judgments of the plaintiffs. There is no purpose on the part of Travelers to leave its insured in the lurch. Cases like *Restighini* v. *Hanagan,* 302 Mass. 151, and *Klefbeck* v. *Dous,* 302 Mass. 383, are not in point. We see nothing to give rise to the asserted estoppel against Travelers.

The final decree is reversed and instead a new final decree is to be entered ordering American Fidelity and Casualty Company, Incorporated, to pay the judgments of the plaintiffs. Should it appear at the entry of the final decree that any amount for which The Travelers Insurance Company is liable under "Coverage A" is not collectible from American Fidelity and Casualty Company, Incorporated, appropriate adjustment should be made.[1] The Travelers Insurance Company is to have costs, including costs of appeal.

*So ordered.*

---

[1] See *Kenner* v. *Century Indemnity Co.* 320 Mass. 6, 15.