**AMERICAN FIDELITY & CASUALTY COMPANY, Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Appellee.**

**No. 18878.**

United States Court of Appeals
Fifth Circuit.

July 6, 1962.

John H. Holloman, Columbus, Miss., R. W. Keenon, Gladney Harville, John L. Davis, Lexington, Ky. (Stoll, Keenon & Park, Lexington, Ky., of counsel), for appellant.

Leslie Darden, Lester F. Sumners, New Albany, Miss., Sumners & Hickman, Oxford, Miss., Smallwood, Darden & Sumners, New Albany, Miss., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

RIVES, Circuit Judge.

In this declaratory judgment action between two automobile liability insurers, the district court held that American Fidelity & Casualty Company (hereafter "A.F. & C.") was the primary insurer, and that United States Fidelity & Guaranty Company (hereafter "U.S.F. & G.") was only the excess insurer. Upon appeal, A.F. & C. presents a single contention to the effect that the driver of the motor vehicle at the time of the collision was not insured under its policy, and hence that it was no insurer whatsoever of liability for the resulting injuries.

Beginning on February 15, 1955, A.F. & C. issued its liability policy to J. T. Garrard of Starkville, Mississippi (hereafter "Garrard"), covering his fleet of trucks, and this policy was renewed from year to year. On January 1, 1957, U.S.F. & G. issued its liability policy to Bryan Brothers Packing Company, Inc., of West Point, Mississippi (hereafter "Bryan Brothers"). The policy provided that as to "any hired automobile insured on a cost of hire basis or the use of any non-owned automobile [the insurance under this policy] shall be excess insurance over any other valid and collectible insurance." On June 24, 1957, Garrard leased a tractor and trailer to Bryan Brothers to be used by it in hauling its meat products to customers. Jimmy Latham (hereafter "Latham"), an employee of Bryan Brothers, had driven the truck and trailer transporting a load of products from Bryan Brothers' plant in West Point, Mississippi, to some of its customers in Louisville, Kentucky. On October 28, 1957 Latham had started to return the truck and trailer to Mississippi when a collision occurred in Kentucky, resulting in severe injuries and damages.

Suits were filed in Kentucky against Latham, Bryan Brothers and Garrard. The Kentucky State Court granted summary judgment in favor of Garrard, determining that Garrard had no liability on account of the accident on the ground that Latham was the employee of Bryan Brothers. A.F. & C. refused to defend Latham or Bryan Brothers, and U.S.F. & G. undertook their defense under a reservation of rights. While the litigation was under way, this declaratory judgment action was brought to determine the respective liabilities of A.F. & C. and U.S.F. & G.

The question was raised both in the district court [1] and by this Court during argument on appeal, as to the jurisdiction of the district court to hear this action. In its petition for declaratory judgment, U.S.F. & G. states that in the event of any payment under its policy, it will be subrogated to all the rights of the insured, including Bryan Brothers and Latham, to recover from any other party.[2]

The rights arising under the doctrine of subrogation have been set out in a number of cases; and, contrary to the position posed by this Court during argument, it is not a prerequisite to this action that U.S.F. & G. be privy to the contract of A.F. & C. As stated in National Surety Corp. v. First National Bank, 1939, 278 Ky. 273, 128 S.W.2d 766, 767, 769, quoting from Vance v. Atherton, 1934, 252 Ky. 591, 67 S.W.2d 968, 970: "The doctrine of subrogation

---

1. "The first matter I need to consider is the question of whether the Court has jurisdiction, which is closely connected with whether there is a controversy, and this can be considered under the Declaratory Judgment statute.

"As a conclusion of law, the Court finds it does have jurisdiction, and that a declaratory judgment does exist between the Plaintiff and the Defendant."

2. U. S. F. & G. relies on the following provision in its policy:

"15. Subrogation. In the event of any payment under this policy, the Company shall be subrogated to all the Insured's right of recovery therefor against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights."

is pure equity, having foundation in principles of natural justice. It rests, not on contract, but on the natural principles of right and justice, when applied to the facts of the particular case, and includes every instance in which one who is not a volunteer pays the debt of another. * * * It is applied only when necessary to bring about equitable adjustment of a claim founded on right and natural justice."

The National Surety Corp. case concerns the right of a surety to be indemnified by the principal debtor, but the doctrine of subrogation is broader than the facts of that case. In New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 1939, 108 F.2d 65, 70, where Sinclair sought indemnity from the insurer of its subcontractor for payment of a tort judgment for injury inflicted by the subcontractor, the court said:

"The doctrine of subrogation is not confined to the relation of principal and surety. It has been expanded so that it is now broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.

"Where two persons are equally liable to the creditor, if as between themselves there is a superior obligation resting on one to pay the debt, the other after paying it, absent countervailing equities, is entitled to be subrogated to the debt and the creditor's security therefor, to obtain reimbursement."

See also Bennett v. The Preferred Accident Ins. Co. of N. Y., 10 Cir., 1951, 192 F.2d 748, 751, 752.

This doctrine has been applied between automobile liability insurers where two policies happen to cover the same vehicle, one of which is determined to be the primary insurer and the other an excess or secondary insurer. See Aetna Casualty & Surety Co. v. Buckeye Union Casualty Co., 1952, 157 Ohio St. 385, 105 N.E.2d 568, 31 A.L.R.2d 1317, 1322, 1323 and annotation attached; 31 A.L.R.2d 1324 on "Right to subrogation, as against primary insurer, of liability insurer providing secondary insurance." See also annotations on related subjects in 69 A.L.R.2d 1122 and 76 A.L.R.2d 502. We agree with the conclusion of the district court that it had jurisdiction.

Whether Latham was insured under the policy issued by A.F. & C. to Garrard depends upon that policy's definition of "insured," as follows:

"Receipt Basis—Truckman.
"(Form B.)
"1. Definition of Insured. As respects such insurance, Insurance Agreement 111, Definition of Insured, is replaced by the following:

"The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply;

"(a) except with respect to an employee of the named insured, to any person or organization, or to any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others (1) if the accident occurs while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, or (2) if such person or organization so engaged is subject to the security requirements of any motor carrier law and satisfies any such requirement by any means other than automobile liability insurance, or (3) if such person or organization is insured under an automobile liability insurance policy

which affords covering for automobile hired by such person or organization but which does not insure on a direct primary basis the owners of such automobiles and the agents and employees of such owners, while such automobiles are being used exclusively in the business of such person or organization and over a route such person or organization is authorized to serve by federal or public authority; provided, however, a driver or other person furnished to the named insured with an automobile hired by the named insured shall not be deemed an employee of the named insured:

"(d) with respect to any hired automobile, to the owner or any lessee of such automobile, or to any agent or employee of such owner or lessee, if the accident occurs (1) while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, or (2) after arrival of the automobile at its destination under a single trip contract which does not provide in writing for the return trip of the automobile."

The argument of A.F. & C. is well summarized in its brief as follows:

"To paraphrase the specific language of the policy the insurance with respect to a person or organization (Bryan Bros. Packing Company or Jimmy D. Latham) other than the named insured (J. T. Garrard) does not apply to any organization (Bryan Bros. Packing Company) or to any employee thereof (Jimmy D. Latham) engaged in the business of transporting property by automobile for others (Bryan Bros. Packing Company):

"1. If the accident occurs while such automobile is not being used exclusively in the business of the named insured (it was being used in the business of Bryan Bros. Packing Company) and over a route the

named insured (Garrard) was authorized to serve by federal or public authority. (Garrard had no operating rights in Kentucky) or

\* \* \* \* \* \*

"3. If such person or organization (Bryan Bros. Packing Company) is insured under an automobile liability insurance policy which affords covering for automobiles hired by such person or organization (The Appellee's policy covers leased vehicles) but which does not insure on a direct primary basis the owner of such automobile (J. T. Garrard) while such automobiles are being used exclusively in the business of such person or organization (Bryan Bros. Packing Company).

"The facts in this case are not contradicted and the question presented is solely one of law. The accident occurred in Kentucky while the truck was being used for the transportation of property for Bryan Bros. Packing Company and it was not being used exclusively in the business of the named insured in appellant's policy or over a route which it was authorized to serve. Clearly then, coverage is excluded as to Latham by subparagraph (1) of paragraph (a) under the definition of 'insured.' Further, coverage is excluded as to Latham by subparagraph (3) of paragraph (a) since Bryan Bros. Packing Company was insured under an automobile liability insurance policy which did not afford direct coverage to the owner of the policy."

On the other hand, the contention of U.S.F. & G. is equally well summarized in its brief, as follows:

"If a person or organization hauling its own products to customers is 'engaged in the business of transporting property by automobile for others' and if the right to haul one's products to customers over the public highways is use of a 'route authorized to be served by federal or public authority' then appellant is

correct. But truly, such an interpretation would be an example of the old insurance jest that 'the first clause giveth but the last clause taketh away.' We respectfully submit that under such a construction no one can conceive of a permissive user who would be covered by the omnibus clause.

"Obviously, the classes of permissive users sought to be excluded by the A.F. & C. are common carriers and contract carriers for hire such as are required to hold Interstate Commerce Commission (federal) permits or intrastate carriers who are required to hold state or municipal permits and the rationale of excluding publicly enfranchised carriers may be that A.F. & C. did not wish to have the provisions of such enfranchising statute or ordinance 'written into its policy' thereby possibly altering its coverage, its limits, or its ability to cancel without notice to the licensing body. Furthermore, public carriers are generally well insured and excluding them from omnibus coverage substantially reduces the risk without decreasing the competitively required omnibus coverage for all other permissive users who may or may not be insured.

"The clause in question refers to two named parties, the named insured and such person or organization as might be an additional insured, and the use of the phrase 'for others,' by common definition and usage could not refer to the two named parties. * * * If the phrase 'for others' was intended by A.F. & C. to encompass the permissive user's own property then the term is ambiguous and A.F. & C., as drafter of the policy, is caught by the rule that ambiguous policies are construed most strongly against the insurer."

If the argument of A.F. & C. be accepted, then the broad coverage of any person using the automobile with the permission of the named insured is rendered practically meaningless by the subsequent exclusionary provisions. The language employed in those exclusionary provisions—e. g., "engaged in the business of transporting property by automobile for the named insured or for others * * * over a route the named insured is authorized to serve by federal or public authority, * * * over a route such person or organization is authorized to serve by federal or public authority"—has obvious reference to a common carrier or to a regulated contract carrier, and is not applicable to the situation of Latham transporting property of his employer, Bryan Brothers. We have examined the cases relied on by A.F. & C.,[3] and we find nothing in any of them to support its contention. We agree with the district court that U.S.F. & G. has the right of the argument. The judgment is therefore

Affirmed.

JOHN R. BROWN, Circuit Judge (concurring in part and dissenting in part).

I concur in the construction the Court gives to these policy provisions. But I do not think there was a real case below and I therefore dissent from the holding either of jurisdiction or the propriety of the use here of declaratory relief.

The opinion states that "U.S.F. & G. states that in the event of any payment under its policy, it will be subrogated to all rights of the insured * * *."

That is a thing which may never occur. Until it does the bald fact is that U.S.F. & G. and A.F. & C. are complete strangers. We ought not be refereeing these intramural matches which rest on nothing more than the assertion that some other party has made a contract with still another party which, if now applied

3. McFarland v. Chicago Exp. Inc., 7 Cir., 1952, 200 F.2d 5, 6, 7; Penn v. National Union Indemnity Co., 5 Cir., 1934, 68 F.2d 567; Continental Cas. Co. v.

Weekes, Fla., 1954, 74 So.2d 367, 368, 369, 46 A.L.R.2d 1159; O'Brien v. Ready, 1959, 331 Mass. 204, 118 N.E.2d 98.

to strangers to it, will completely excuse the performance of another contract which concededly is applicable and effective. See American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., 5 Cir., 1957, 248 F.2d 509, 510–11; Maryland Casualty Co. v. Southern Farm Bureau Casualty Ins. Co., 5 Cir., 1956, 235 F.2d 679, 680; United Services Automobile Association v. Russom, 5 Cir., 1957, 241 F.2d 296, 297; General Insurance Co. v. Western Fire & Casualty Co., 5 Cir., 1957, 241 F.2d 289, 290; American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 5 Cir., 1960, 280 F.2d 453, 455.

Subrogation to rights which maybe-sometime-might come into being ought not to make existing controversies out of presently academic differences. We have declined to make these judicial guesses for parties. Byers v. Byers, 5 Cir., 1958, 254 F.2d 205 and American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., supra.

Whether U.S.F. & G. ever has to make a payment out of which we now allow a sort of anticipatory subrogation to spring into being depends on many unknowns. It might win the Kentucky damage suits. In that event all that would be at issue is cost of defense. As to that we have firmly held that that duty is personal to the assured *vis-a-vis* his own selected insurer. American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., supra; cf. Smoot v. State Farm Mutual Automobile Insurance Co., 5 Cir., 1962, 299 F.2d 525. If the cases are merely settled, then a whole host of new problems arise as to whether U.S.F. & G., having an assumed status as a vicarious assured under A.F. & C.'s policy, is entitled to make that insurer make reimbursement for a settlement not made with A.F. & C.'s consent. See, United Services Automobile Association v. Russom, supra. If it is made with A.F. & C.'s consent, the consent itself might be in terms which would resolve the dispute presented before us.

All this merely demonstrates that the debate now raging between these two supposed adversaries may never ripen into something which is real. I would be the last to inject any technical niceties into the Article III "case or controversy" element. Byers v. Byers, 5 Cir., 1958, 254 F.2d 205. But, flexible as declaratory relief is and should be, we should confine ourselves to disputes which are real and present, not those which someday may be. In the meantime we ought not to be serving as a gratuitous board of referees between insurers who can undoubtedly find a better way to resolve these internecine struggles. Brown and Risjord, Loading and Unloading: The Conflict Between Fortuitous Adversaries, 29 Ins. Counsel J. 197 (April 1962).

Until this harvest has ripened we ought not to be saying what should happen to the grain.

I therefore respectfully dissent as to this feature.