Doris G. FENNER et al., Plaintiffs,

v.

CONTINENTAL DIVING SERVICE, INCORPORATED, et al., Defendants-Appellees,

v.

AQUATIC CONTRACTORS & ENGINEERS, INC., Defendant-Appellant.

No. 74–2755.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1976.

Craig R. Nelson, New Orleans, La., for defendant-appellant.

Donald M. Pierce, Christopher Tompkins, New Orleans, La., for Continental Diving Service.

H. Edward Weidlich, Jr., New Orleans, La., for Employers Surplus Lines Ins. Co.

Before BROWN, Chief Judge, and WISDOM and COLEMAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is a case of now you see it, now you don't. Worse, it is a contrived controversy in which the wolf in sheep's clothing turns out to be the sheep. As Article III does not give us the shepherd's role, we dismiss for want of a judicial controversy between live litigants.

Ostensibly, this case presents many of the questions this Court faced recently in *Law v. Sea Drilling Corp.*, 5 Cir., 1975, 510 F.2d 242, 245–46, *reh. denied*, 5 Cir., 523 F.2d 793, but with a different twist. It is a fight among insurance companies who have attempted to construct a controversy in the name of others. The named parties are not the real parties in interest, *see* F.R.Civ.P. 17(a)—the named parties' claims have been settled or are covered by insurance. The real parties are Continental Diving's liability insurers—three legal and one contractual—in an internecine quarrel as to who bears all or part of the loss against their common assured.

The District Court found that under the settlement agreement which reserved the question of what underwriter was to bear one-half of the agreed payment, the contractual insurer (Canadian) of Continental Diving, the employer of the injured party, Fenner, was liable, not the legal liability insurers of the same assured, Continental Diving. The District Judge decided that this "indemnity" was based on Continental's contractual liability and that therefore its contractual insurer, not its legal liability insurers, must pay Aquatic's share attributable to the stipulated unseaworthiness of Aquatic's Barge. Here we must disagree. Since there was no question about Aquatic's liability, there was no real case or controversy between the nominal parties. This is a private affray among underwriters, one of whom is not even a party, and therefore, we must vacate the District Court's findings and remand for dismissal.

The saga began when Ms. Doris Fenner brought a seaman's suit[1] on behalf of her then minor son, Jack, for injuries he received while employed as an apprentice diver for Continental Diving. Jack was seriously injured when a helium volume tank exploded as he worked aboard Barge WB–

---

1. The Jones Act, 46 U.S.C.A. § 688.

102 owned by Aquatic.[2] Fenner sued Continental Diving (his employer), Aquatic (the barge owner who had employed Continental Diving), and Chevron Oil Company[3] (who hired Aquatic to conduct the repairs to its offshore pipeline).

Fenner alleged negligence by Continental, who brought the helium tank on board, and unseaworthiness of Aquatic's barge.[4] Before trial, the parties reached an agreement and stipulated several issues. Among those points agreed to were that Aquatic was not negligent, a leak in the volume tank was the proximate cause of Fenner's injury, Fenner was entitled to recover against Continental under the Jones Act and against Aquatic for unseaworthiness, and in full settlement, Fenner was to recover from Continental's legal liability insurers. The only issue reserved for further trial was whether, as to one-half of the settlement, Continental's liability insurers or its contractual insurers would bear the burden.[5] Significantly, the stipulation dismissed Continental's counterclaim against its own contractual insurer, Canadian.[6]

To fully understand the legal legerdemain attempted here it is necessary to know the players in insurers' garb. *See Kessler v. Pennsylvania National Mutual Casualty Insurance Co.*, 5 Cir., 1976, 531 F.2d 248, 250; *American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co.*, 5 Cir., 1957, 248 F.2d 509, 510. Otherwise, the hand may indeed be quicker than the eye. State Automobile and Casualty Underwriters is Continental's primary legal liability insurer and Continental Casualty Company and Employers' Surplus Lines are the excess legal liability insurers for Continental. Canadian Universal Insurance Company is Continental's contractual liability insurer. The conflict in this drama is between Canadian, claiming to represent Aquatic, and the legal liability insurers, who paid the settlement to Fenner.

At trial, Canadian, in the appealing garb of Aquatic, for natural reasons of self interest, disclaimed any right of contractual indemnity from Continental. Instead, it argued legal indemnity on the basis of the

2. Presumably because this Court has held that a drilling barge, which like this one had no motive power but included living quarters for the crew, is a vessel, *Hicks v. Ocean Drilling and Exploration Co.*, 5 Cir., 1975, 512 F.2d 817, 824, the real parties stipulated that Fenner was a seaman—whether Bluewater or Sieracki is not disclosed—to whom the warranty of seaworthiness was owed.

3. Chevron asserted in its answer that Continental and Aquatic were independent contractors and therefore Chevron had no liability. Chevron also sued all interested insurance companies as third party defendants seeking contribution and indemnity. In a pretrial conference Fenner voluntarily dismissed his complaint against Chevron and Chevron dismissed all of its suits and cross claims.

4. Because of the express stipulation, there is no question that under the Jones Act the employer is liable to a Sieracki seaman for any negligence, *Offshore Company v. Robison*, 5 Cir., 1959, 266 F.2d 769, 774; *Creppel v. J. W. Banta Towing, Inc.*, E.D.La., 1962, 202 F.Supp. 508, 512; *see Moore v. Associated Pipeline Contractors*, 5 Cir., 1972, 468 F.2d 815, 816, and the vessel owner is liable for unseaworthiness, *Grigsby v. Coastal Marine of Texas*, 5 Cir., 1969, 412 F.2d 1011, 1969 A.M.C. 1513.

5. The fiction, with imaginative resourcefulness, followed this curious course. Since unseaworthiness of Aquatic's barge was due solely to the defectiveness of the volume tank, Aquatic had an open and shut indemnity claim, either under the express contractual indemnity, or for breach of the warranty of workmanlike performance. Consequently, the internal struggle among Continental's underwriters was really a question of how much—and from whom—Aquatic would get reimbursement for a judgment it had never paid nor in which it was cast for a single *sous*.

6. Canadian is not a named party to this action and it did not sign the stipulation. Chevron originally joined Canadian but dropped this action when Fenner dismissed his suit against Chevron. App. 56. Note 2, *supra*. Continental also counterclaimed against Canadian for breach of contract, alleging that Canadian in defending Aquatic was actually cross-claiming against Continental which "effectively denies coverage under the policy of insurance for which it paid premiums to Canadian." App. 59. This claim was dismissed as part of the stipulation.

active-passive tort theory[7] or the *Ryan*[8] doctrine of warranty of workmanlike performance [WWLP]. *See D/S Ove Skou v. Hebert*, 5 Cir., 1966, 365 F.2d 341, 351, 1966 AMC 2223. Of course, the real Aquatic could not care less (see note 5, *supra*).

Since the contract between Continental and Aquatic specifically provides that Continental will indemnify Aquatic for any liability resulting from work performed under the contract,[9] it may appear strange that Aquatic disclaimed contractual indemnity. But the sleight-of-hand is at last apparent—Aquatic is actually Canadian.[10] Aquatic—if there was anything to be indemnified for—will be indemnified under any theory, but Canadian will be liable for $80,000 only if Aquatic's liability is contractual.

■ The District Judge found that, nominally, Aquatic was responsible for one-half of the $160,000, but that it was indemnified based on the contract between Aquatic and Continental. Clearly under active-passive, *Ryan* or contract, Aquatic has no liability to Continental.

As between Continental and Aquatic, there was thus no controversy at all. Nor was there between Aquatic and Continental. Aquatic was not cast with any judgment nor had it paid anything other than legal costs which Canadian, the payer, does not challenge. All that was there was a claim by Continental's own insurer (Canadi-an) that other insurers of the common assured should bear the loss. This was Canadian's claim only and it was not even a party to the litigation and it could not through subrogation under these circumstances wrap the mantel of Aquatic around it.

■ The Canadian policy, as did the others, defined the "insured" to include the named assured and various entities of which it was a part. In no sense was the indemnitee (Aquatic) an "insured", even though by virtue of the contractual indemnity it was assured that legal defense would ultimately be at the expense of Continental. Aquatic, not being an assured under the Canadian policy, Canadian, could not then step into the shoes of Aquatic, since the policy prescribed subrogation to the rights of the assured only.[11]

■ Since subrogation in Aquatic's name fails against Continental or its liability insurers, the only thing remaining is a possible claim by Canadian either in its own right or as subrogee to its assured (Continental) against the co-underwriters. Without Canadian even being a party, and standing as subrogee to Aquatic having failed, there was really no justifiable controversy at all before the Court between Canadian and the liability insurers. But glossing over this, Canadian's subrogation rights were to those of its assured (Continental) and there is nothing in the policy

---

7. *Grigsby v. Coastal Marine Serv. of Texas, Inc.*, 5 Cir., 1969, 412 F.2d 1011, 1039–40, 1969 AMC 1513; *Tri-State Oil Tools Indus. v. Delta Marine Drilling Co.*, 5 Cir., 1969, 410 F.2d 178, 187, 1969 AMC 767.

8. *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 1966, 350 U.S. 124, 134, 76 S.Ct. 232, 100 L.Ed. 133, 142, 1966 AMC 9.

9. App. 72. Oddly enough, and though not addressed by any of the insurers, the sweeping contractual liability coverage had a special exclusion which appears to rule out WWLP as a contractual claim:

Contractual liability shall not be construed as including liability under a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.

10. Apparently because the broad indemnity agreement from Continental to Aquatic required it to bear the legal cost and defense of claims brought by third parties by reason of operations within the scope of the indemnity, Canadian took over the defense of Aquatic and appointed counsel acting nominally for Aquatic, including, of all things, a probable outright conflict with the interest of its only and real assured, Continental (*see* note 6, *supra*).

11. 7. Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefore against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, the *insured* shall do nothing after loss to prejudice such rights. (Emphasis in original policy).

which gave Canadian subrogation rights against its own assured, or through it, to the other insurers. There being no relationship between it and the other insurers, it cannot latch onto liabilities which the others may owe to the assured (or third parties).[12] *See Kessler v. Pennsylvania National Mutual Casualty Insurance Co., supra,* at 256; *American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co.,* 5 Cir., 1957, 248 F.2d 509.

Nor do the apparent beneficiaries—the legal liability insurers—of the trial court's ruling fare any better. There is no claim by Continental against Aquatic to which the legal liability underwriters could be subrogated. And while Canadian was once in the suit as a party, Continental's cross claim was dismissed as a part of the stipulation (see note 6, *supra*).

■ The result is that there are no live parties with a live controversy before the Court. To be sure, it is a lively controversy over which interesting law review comments might be written. But while we occasionally may be tempted into such an exercise, we must heed the Article III mandate and resist such importunities. Until such time as there are live combatants, the Court was powerless to act. So are we.[13]

VACATED FOR WANT OF JURISDICTION.

---

12. Canadian's policy was confined to (i) manufacturers and contractors and (ii) contractual liability. It provided:

    6. Other insurance. The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance (emphasis in original).

13. Assuming viable parties with a live controversy before a proper Court, we intimate no views on the underlying merits.