CONTINENTAL CASUALTY COMPANY
and Employers Surplus Lines Insurance
Company, Plaintiffs-Appellees,

v.

CANADIAN UNIVERSAL INSURANCE
CO., Defendant-Appellant.

No. 77–2374.

United States Court of Appeals,
Fifth Circuit.

Nov. 5, 1979.

Craig R. Nelson, New Orleans, La., for defendant-appellant.

Christopher Tompkins, A. Wendel Stout, III, New Orleans, La., for plaintiffs-appellees.

Before GODBOLD, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Stipulations are executed in the hope of minimizing litigation. They frequently achieve that end. Occasionally, however, they result merely in the escalation of hostilities, and serve as the basis for new disputes about the meaning of the agreement. In this appeal we consider just such consequences of a 1974 stipulation executed to end a 1971 personal injury suit. To bring that suit to a partial conclusion, an insurer of one of the principal defendants, pursuant to a stipulation with the other defendants, paid a substantial amount to the injured party in settlement of his claim. This final round is fought in its effort to obtain reimbursement of one-half the payment from another insurer. We conclude that the party who paid the compromise is entitled to recoup a share of what it has paid, and thus, we hope, end the eight year battle.

I.

These facts were established by a stipulation in the prior suit brought by Mrs. Doris Fenner on behalf of her minor son, Jack, against Continental Diving Service and Aquatic Contractors.

Jack Fenner was employed by Continental Diving as a diver's tender. Aquatic engaged Continental Diving to perform diving services that were necessary to enable Aquatic to complete its contract with Chevron Oil Company. In order to perform these services, Continental Diving's crew, including Fenner, went aboard an Aquatic barge, V–102, with their diving equipment.

This equipment included a helium volume tank.

The volume tank was defective and it exploded, injuring Fenner. Aquatic was not negligent in any way. The claim against Aquatic was based on the unseaworthiness of its vessel, barge V–107, and Fenner's status as a member of its crew even though he was employed by Continental Diving. The presence of the defective volume tank on the vessel made it unseaworthy. Therefore, Continental Diving paid $160,000 to Fenner in compromise of his suit.

Continental Diving had asserted claims for indemnity and contribution against Aquatic. In a formal stipulation, the parties agreed that Continental Diving would bear one-half of the sum paid, because of the claims of negligence made against it by Fenner; that the other one-half was attributable to the unseaworthiness of Aquatic's barge; and that they "reserve for trial and decision on this Stipulation and Memoranda [sic] by the court how" the second one-half "should be borne as between themselves as a matter of law."

This in effect was a stipulation that the contractor, Continental Diving, whose actions were agreed to have made unseaworthy a vessel owned by the firm with which it had a contract, Aquatic, might recoup what it had paid a person injured as a result of unseaworthiness of the vessel. It was patently unusual. The rationale for it was disclosed by facts in the record of the first case but not in the stipulation.

In its original contract with Aquatic, Continental Diving had agreed to hold Aquatic harmless against all claims arising out of the unseaworthiness of any vessel engaged in performance of the contract. Because of its obligations under this contractual indemnity clause, Continental Diving had obtained insurance from the Canadian Universal Insurance Company against

contractual liability including any warranty that Continental Diving's work be performed in a workmanlike manner. Continental also had obtained insurance against legal liability, including claims arising against it delictually from three levels of insurers, referred to here only as Continental Casualty.[1] By various pleadings, all of the insurers were joined in the Fenner suit.

Canadian had assumed defense of the claim against Aquatic in Fenner's suit. In the stipulation Canadian was dismissed from that suit, but counsel retained by it executed the stipulation nominally on behalf of Aquatic.

Continental Casualty paid the full amount of the settlement with Fenner, then sought to recoup one-half from Canadian on the basis that the liability for the "unseaworthiness half" of the judgment resulted from Continental Diving's contractual indemnity of Aquatic and was, therefore, covered by Canadian's policy, rather than from the legal liability, maritime negligence, and Jones Act claims, covered by Continental Casualty's insurance. Canadian agrees that Continental Diving owed the payment to Aquatic but contends that the obligation was delictual, arising out of the principles of comparative negligence and breach of the implied warranty of workmanlike performance due by Continental Diving to Aquatic, as distinguished from the express contractual indemnity, hence that ultimate liability should be borne solely by Continental Casualty.

The insurers first attempted to resolve this question by further proceedings in the Fenner suit. The trial court decided in favor of Continental Casualty. Canadian, in the name of Aquatic, having itself been dismissed from the case, appealed to us. In *Fenner v. Continental Diving Service, Inc.,* 5 Cir., 1976, 543 F.2d 1113, we characterized the suit then before us as a "contrived controversy in which the wolf in sheep's

---

1. The Jones Act and maritime delictual liability of Continental Diving was insured by State Automobile and Casualty, up to a limit of $5,000; by Continental Casualty for the next $20,000 as excess insurance; by Employer's Surplus Lines for $75,000 as excess; and then again by Continental Casualty for $400,000 excess, making a total insurance blanket of $500,-000.

clothing turns out to be the sheep," and dismissed the suit "for want of a judicial controversy between live litigants." 543 F.2d at 1114. As we there said, it was "a fight among insurance companies who have attempted to construct a controversy in the name of others." *Id.*

We noted, too, that Canadian could not be subrogated to the rights of Aquatic because it was not Aquatic's insurer. "Canadian's subrogation rights were to those of its assured (Continental [Diving]) and there is nothing in the policy which gave Canadian subrogation rights against its own assured or, through it, to the other insurers. There being no relationship between it and the other insurers, it cannot latch onto liabilities which the others may owe to the assured (or third parties)." 543 F.2d at 1116–17. Accordingly, we dismissed that suit.

■■■ Continental Casualty then instituted this suit in an effort to recover from Canadian, and we now have the true parties in interest before the court. The complaint does not, as the rules require, contain "a short and plain statement of the grounds upon which the court's jurisdiction depends," Fed.R.Civ.P. 8, but it does allege the citizenship of the parties and, therefore, diversity jurisdiction is evident from the face of the complaint.[2] There is also jurisdiction in admiralty, 28 U.S.C. § 1333, because the suit is based on three maritime contracts, the Aquatic-Continental Diving contract and the two insurance policies.

Canadian asserted by motion to dismiss that Continental Casualty "could not become subrogated to any rights their assured . . . had *against Aquatic*" (emphasis supplied), and that its dismissal from the prior suit was with prejudice and res judicata. Continental Casualty in turn countered

with a motion for summary judgment based on the stipulation in the prior suit; it also produced a letter between counsel evidencing an understanding that the prior dismissal was without prejudice, and that defense is now apparently abandoned by Canadian for it was not asserted before us.

## II.

■■■ It is evident from our prior opinion that it determined nothing, for we said, "[W]e intimate no views on the underlying merits." *Fenner v. Continental Diving Service, Inc.*, 5 Cir. 1976, 543 F.2d 1113, 1117, n. 13. There is no basis for res judicata unless something is adjudged. It matters not if the thing demanded be the same or the cause of action and the parties be identical. *Cf.* La.Civ.Code Ann., art. 2286 (West 1952). Without a judgment on the merits nothing is adjudicated. The judgment in this case was vacated for want of jurisdiction. It is frivolous to contend that such a determination would support a plea of res judicata, for only a final judgment suffices to do so. Fed.R.Civ.P. 41(b); *United States v. Lucchese*, 1961, 365 U.S. 290, 81 S.Ct. 565, 5 L.Ed. 568; *Costello v. United States*, 1961, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed. 551; *Watson v. Stynchcombe*, 5 Cir. 1974, 504 F.2d 393; *Oppenheim v. Sterling*, 10 Cir. 1966, 368 F.2d 516, 520. *See also Muchard v. Berenson*, 5 Cir. 1962, 307 F.2d 368, *cert. denied*, 1963, 371 U.S. 962, 83 S.Ct. 541, 9 L.Ed.2d 509.

## III.

Continental Casualty in effect asserts that it is subrogated to the contractual claim of Continental Diving against Canadian (not Aquatic) arising out of Continental Diving's insurance contract with Canadian.

**2.** 28 U.S.C. § 1332(c). The 1964 amendment to that section provides that, "in any direct action against the insurer . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen . . ." This is not, of course, such a direct action. In *Campbell v. Insurance Company of North America*, 5 Cir. 1977, 552 F.2d 604 (per curiam), we held that the attribution of citizenship likewise applies to an action by the insurer against the injured party. *Contra, Aetna Casualty & Surety Insurance Co. v. Greene*, 6 Cir. 1979, 606 F.2d 123. This is neither a direct action by the injured party against the insurer nor the obverse situation considered in *Campbell*. Hence, the evident diversity of the two insurers gives us diversity jurisdiction and the 1964 curtailment does not deprive the parties of a federal forum.

■ The first question, the answer to which is by no means clear, is whether we look to the law of Louisiana or to federal law to determine whether Continental Casualty is entitled to be subrogated to those claims. The mere fact that one basis of our jurisdiction is diversity does not answer the question. A maritime issue may be raised in a diversity suit; this is one significance of the savings-to-suitors clause, 28 U.S.C. § 1333, which permits a litigant to obtain federal jurisdiction over, and jury resolution of, an admiralty question by invoking federal jurisdiction on an independent basis. *Romero v. International Terminal Operating Co.,* 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368; *Fitzgerald v. United States Lines Co.,* 1963, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 770. A maritime claim may also be brought in state court. *Garrett v. Moore-McCormack Co.,* 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239. However, while jurisdiction to decide the litigation may be concurrent with state courts or invoked in a federal court on some independent basis, maritime law determines the rights of the parties. *Seas Shipping Co. v. Sieracki,* 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; *Garrett v. Moore-McCormick Co.,* 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; *Chelentis v. Luckenbach S.S. Co., Inc.,* 1918, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171. See discussion in G. Gilmore & C. Black, The Law of Admiralty 456 (2d ed. 1975).

The principles of subrogation, conceived in equity and nurtured by common law, have also been adopted in admiralty. *Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co.,* 5 Cir. 1962, 303 F.2d 692, 696–697, cert. denied, 1962, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276; *The Etna,* 3d Cir. 1943, 138 F.2d 37, 39; *In re New York Trap Rock Corp.,* S.D.N.Y.1959, 172 F.Supp. 638, 647. It was in connection with a subrogation claim that Chief Judge Brown set the standard for us here:

The Chancellor is no longer fixed to the woolsack. He may stride the quarterdeck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels.

*Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co.,* 303 F.2d at 699 (footnote omitted).

■ The right of subrogation is not founded in contract. "It is a creature of equity; is enforced solely for accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." *Memphis & L.R.R. Co. v. Dow,* 1887, 120 U.S. 287, 301–302, 7 S.Ct. 482, 489, 30 L.Ed. 595, 601. *See also United States v. Continental Casualty Co.,* 5 Cir. 1975, 512 F.2d 475. It is administered so as to secure justice without regard to form, and applies in all cases in which one party, not a volunteer, pays a debt for which another is primarily liable, which in equity and good conscience should have been paid by the latter. *In re Forester,* 9 Cir. 1976, 529 F.2d 310, 314–15; *Industrial Development Board v. Fugua Industries, Inc.,* 1975, 523 F.2d 1226 (applying Alabama law); *Travelers Indemnity Co. v. Peacock Construction Co.,* 5 Cir. 1970, 423 F.2d 1153, 1158 & n. 10; *Compania Anonima Venezolana De Navegacion v. A.J. Perez Expert Co.,* 5 Cir. 1962, 303 F.2d 692, 697, cert. denied, 1962, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276; *American Fidelity & Casualty Co. v. United States Fidelity & Guaranty Co.,* 5 Cir. 1962, 305 F.2d 633 (in which we granted subrogation in favor of one automobile liability insurer against another insurer of the same assured).

■ Section 81 of The Restatement of Restitution (1937) provides:

Unless otherwise agreed, a person who has discharged more than his proportionate share of a duty owed by himself and another as to which, between the two, neither had a prior duty of performance, is entitled to contribution from the other, except where the payor is barred by the wrongful nature of his conduct.

The rule applies whether the parties are primary or, as here, secondary obligors, and to suretyship situations. *Id.* Comment b. Therefore, if Continental Casualty discharged the duty owed by Canadian to Con-

tinental Diving, a matter we will later undertake to explore, then Continental Casualty is subrogated to the rights of Continental Diving.

■ Subrogation may be conventional as well as equitable. *Millers Mutual Fire Insurance Co. v. Farmers Elevator Mutual Insurance Co.*, 5 Cir. 1969, 408 F.2d 776. The contract of insurance between Continental Casualty and Continental Diving provides that Continental Casualty is subrogated to all the insured's rights of recovery of any payment made under the policy. Therefore Continental Casualty would be subrogated under both federal rules to the claims of Continental Diving.

All of the cases we have cited state and apply general principles of subrogation that seem to be applicable here. However, we have found no federal decisions dealing with the precise subrogation issue before us, the payment by one insurer of the debt claimed to be due by another insurer to their common insured. In connection with marine insurance, which has in general been considered an admiralty contract, G. Gilmore and C. Black, The Law of Admiralty 53 et seq. (2d ed. 1975) we have held that, if there is no controlling federal decision of the specific issue before us, we should apply state law. *Lemar Towing Co. v. Fireman's Fund Insurance Co.*, E.D.La.1972, 352 F.Supp. 652, *aff'd*, 5 Cir. 1973, 471 F.2d 609, *cert. denied*, 1973, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed. 219. *See also Travelers Indemnity Co. v. Gulf Weighing Corp.*, E.D.La.1972, 352 F.Supp. 335. This is a sort of renvoi, in which the admiralty court adopts state law as part of the maritime corpus juris. We will look, therefore, to state law to determine whether a different result would obtain.

■ The Louisiana Civil Code provides that subrogation may be either conventional or legal. La.Civ.Code Ann. art. 2159 (West 1952). Conventional subrogation occurs "[w]hen the creditor, receiving his payment from a third person, subrogates him in his rights . . . against the debtor; this subrogation must be expressed and made at the same time as the payment."

Art. 2160. This provision, however, means only that the agreement of subrogation may not be entered into after the payment; in the case of an agreement that, if a party pays a debt in the future, he shall be subrogated to the rights of the creditor, payment of the debt, without more, operates as a subrogation. *Cooper v. Jennings Refining Co.*, 1907, 118 La. 181, 42 So. 766. As we have point out, Continental Casualty's insurance policy with Continental Diving provides for subrogation of Casualty to Diving's right to recover any payment made under the policy on Diving's behalf.

■ Where there is such a subrogation stipulation in an insurance contract, subrogation takes place automatically at the time of payment as an incident to it. *State Farm Fire & Casualty Co. v. Sentry Indemnity Co.*, La.App.1977, 346 So.2d 1331. *See also Brown v. Zito*, La.App.1976, 333 So.2d 649 (where the policy and evidence of payment of the sum sued for were not placed in evidence, and the court held that this was not fatal because the testimony and the exhibits compelled the conclusion that the policy provided "as usual" for subrogation); *American Auto Insurance Co. v. Twenty Grand Towing Co.*, La.App.1969, 225 So.2d 114. Louisiana courts, we conclude, would hold that, when Casualty paid the loss suffered by Diving, its assured, it became subrogated conventionally by virtue of the terms of its insurance contract to the rights of Diving against Diving's other insurer, Canadian.

There is yet another reason why Canadian should not now be permitted to assert that Continental Casualty lacks the right to sue: Canadian entered into a stipulation agreeing that Continental Casualty would pay Fenner's claim and reserving for decision only how one-half of that sum should be borne as between Continental Casualty and Aquatic, whom Canadian has pretended throughout the two suits to be, a costume that we criticized as poor-worn in our prior decision. In fact the claim for unseaworthiness was always a claim against Continental Diving, and Canadian was Continental Diving's insurer. We should not now per-

mit Canadian belatedly, as after-thought, to assert Continental Diving's lack of standing to sue on the claim that Canadian expressly agreed to litigate. Had the question of standing been raised when the stipulation was being discussed, it would likely not have been signed by Continental Casualty or it would have been rephrased to eliminate this issue. Canadian is now estopped to don sheep's garments.

## IV.

A few words suffices for the next claim: that the stipulation was, like a theater ticket, good only for one performance, the prior suit, and cannot now be relied upon. The stipulation contains no such limitation. The record in the prior suit demonstrates that the parties to that litigation well knew how to limit the effect of a stipulation to a single suit.[3] The stipulation was patently intended to be used in future litigation, for it reads, "Aquatic and Continental Diving reserve for trial and decision *on this Stipulation* and Memoranda [sic] by the Court how one-half of the $160,000 settlement . . . should be borne as between themselves . . . ."[4] (emphasis supplied). There is no contention that the stipulation was improvident or that it did not reflect the agreement of the litigants. *See Central Distributors, Inc. v. M.E.T., Inc.*, 5 Cir. 1968, 403 F.2d 943; *Logan Lumber Co. v. Commissioner*, 5 Cir. 1966, 365 F.2d 846; *cf. In re Westinghouse Electric Corp.-Uranium Contracts Litigation*, 10 Cir. 1978, 570 F.2d 899. Canadian has neither sought to repudiate the stipulation nor shown any cause, good or otherwise, why it should not be admitted. *Compare Mittlieder v. Chicago & Northwestern Railway Co.*, 8 Cir. 1971, 441 F.2d 52.

---

3. The stipulation of liability presented to the court as a basis for its findings under the Jones Act in *Fenner v. Continental Diving Service, Inc.*, E.D.La., June 6, 1974, No. 71–2815, recites:

> In the event a final decree is not rendered by the United States District Court for the Eastern District of Louisiana, based upon *this* stipulation then this joint stipulation is to be null and void and may not be used in any litigation involving in any way the parties to this litigation.

4. The stipulation read in part:

> "Parties undersigned have made certain agreements with respect to the compromise and settlement of part of the issues presented in this litigation, and they leave for judicial disposition the balance of the issues. . .
>
> \* \* \* \* \* \*
>
> 13. State Automobile & Casualty Underwriters, Inc., as primary insurer, and Employers Surplus Lines Insurance Company and Continental Casualty Company as excess insurers insured Continental Diving for its legal liability to Fenner as per attached policies.
>
> \* \* \* \* \* \*
>
> 16. Continental Diving Service, Inc. hereby dismisses its counterclaim against Canadian Universal Insurance Company, the contractual liability insurer of Continental Diving, as per attached policy, each party to bear its own costs.
>
> 17. Aquatic and Continental Diving reserve for trial and decision on this Stipulation and Memoranda by the Court how one-half of the $160,000 settlement payment made to Fenner

as set forth in stipulation 14 attributable under stipulations 5 through 10 and 12 to the unseaworthiness of Aquatic's barge should be borne as between themselves as a matter of law.

18. The liability insurers of Continental Diving [e. g. Continental Casualty] contend that *Continental Diving's liability to indemnify* Aquatic for the amounts for which it would initially be cast, by reason of the unseaworthiness of the barge, is a contractual liability and therefore Canadian Universal (the contractual indemnity insurer of Continental Diving) should bear said one-half of the settlement.

19. Aquatic (through defense counsel appointed by Canadian Universal to defend Aquatic) contends that by way of proper defense of Aquatic, Aquatic should exercise all legal rights of indemnity as against, inter alia, Continental Diving and its liability insurers, and that as a matter of law, because of the foregoing stipulations, particularly 5–10 inclusive, Aquatic is entitled to legal indemnity from Continental Diving and its liability insurers (who are similarly not legally entitled to any contribution from Aquatic on the judgment in favor of Fenner) and therefore no residual legal liability rests upon Aquatic, vis-a-vis Continental Diving, upon which the contractual indemnity could operate (other than cost of defense which has previously been furnished) and Continental Diving's liability insurers should bear the whole loss caused by negligence of Continental Diving and may not secure reimbursement for half of said loss from Aquatic.

There is no greater merit to the argument that summary judgment was improper because there were genuine disputes as to material issues of fact. In response to the motion for summary judgment, Canadian filed nothing but this cryptic pleading:

Defendants deny plaintiffs material facts in paragraph 1–3.

Rule 56(e) of the Federal Rules of Civil Procedure expressly condemns to the trashheap of antiquated pleading-style this method of battle by general denial. It requires:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Even now, Canadian sets forth no material facts about which there is any dispute whatever. Assuredly, it contests Continental Casualty's right to recover on the merits but it suggests no material factual issue that might be decided differently if evidence were adduced. We assume that Canadian could demonstrate that the barge was made unseaworthy only by Continental Diving's equipment. That assumption is made in favor of Canadian; and if Continental Casualty could recover even were that proved, then the factual issue is no longer material at this state of the proceedings. On this basis, the trial court correctly decided that the case could be decided on the summary judgment motion.

## V.

We come at last to the merits. If Continental Diving's liability to Aquatic arose out of the indemnity provision in the contract, it was covered by Canadian's policy; if it arose delictually, or out of the warranty of workmanlike performance, it was excluded from Canadian's coverage, as our original opinion shows, *Fenner v. Continental Diving Service, Inc.*, 5 Cir. 1976, 543 F.2d 1113, 1116 n. 9, and such liability was included in Continental Casualty's policy by express provision.

As Judge Edward J. Boyle, Sr., the experienced judge who considered this issue in the first litigation, pointed out, the implied warranty recognized in *Ryan Stevedoring Co. v. Pan Atlantic Steamship Co.*, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, arises only in the absence of express provision for indemnity. *Weyerhaeuser Steamship Co. v. Nacirema Operating Co.*, 1958, 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L.Ed. 491, 495; *Evans v. Triple R Welding & Oil Field Maintenance Corp.*, 5 Cir. 1973, 472 F.2d 713, 716; *Shenker v. United States*, 2 Cir. 1963, 322 F.2d 622; *D'Agosta v. Royal Netherlands Steamship Co.*, 2 Cir. 1962, 301 F.2d 105; *Dery v. Wyer*, 2 Cir. 1959, 265 F.2d 804. Here there was an express contract for indemnity that superseded both any implied warranty and any implied right to indemnity. *Compare Olsen v. Shell Oil Co.*, 5 Cir. 1979, 595 F.2d 1099. Whether, in addition, Continental Diving would have owed Aquatic indemnity on delictual principles is, therefore, inconsequential.

Continental Diving's liability to Aquatic did not arise out of an implied warranty; the liability was founded on the express indemnity agreement between them. It is, therefore, immaterial that, in the absence of such a contractual provision Continental Diving might have had an implied duty to indemnify Aquatic under the WWLP. *See Weyerhaeuser Steamship Co. v. Nacirema Operating Co.*, 1958, 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L.Ed. 491, 495. The *delictual* rules of indemnity whereby a tort feasor who is actively negligent owes indemnity to one jointly cast who is only passively negligent, see *Magnum Marine v. Kenosha Auto Transport Corp.*, 5 Cir. 1973, 481 F.2d 933; *Tri-State Oil Tool Industries, Inc. v. North Marine Drilling Co.*, 5 Cir. 1969, 410 F.2d 178, are superseded by the implied WWLP, an implied *contractual* clause. *Parfait v. Jahncke Service, Inc.*, 5

Cir. 1973, 484 F.2d 296. The contractual clause that would have been implied in the absence of express agreement is in turn superseded by the express provisions of the contract. Canadian's policy provided insurance to Continental Diving for precisely this exposure. Continental Casualty, as Diving's subrogee, is entitled to recover from Canadian for a loss resulting from the very risk Canadian collected a premium to insure.

For these reasons, the judgment of the district court is AFFIRMED.