LABORDE, Judge.
This is an action to declare a purported conveyance of land a simulation. Wiley Johnston, plaintiff, claims that the conveyance of immovable property from his adoptive mother and stepfather to their natural son, defendant Forrest Wade Smith, was a sham transaction. The trial judge found for plaintiff. Defendant appeals. We affirm.
FACTS AND PRIOR PROCEEDINGS
Wiley Johnston, plaintiff herein, was born in Allen Parish on November 12,1916, to Mr. and Mrs. Phillip Smith. Wiley’s mother died before Wiley attained the age of two. On April 30, 1919, Wiley was adopted by Walter Johnston and Johnston’s wife, Mary Johnston. Walter and Mary Johnston produced no natural children.
On October 24, 1925, Walter and Mary Johnston purchased a 140 acre tract in Allen Parish from J. Mayo Courville. Walter died on March 13, 1927, and Mary subsequently married Jessie Spears, who had children from a prior marriage.
The marriage of Mary and Jessie Spears produced one child, Forrest Wade Spears, defendant herein, who was born on March 24, 1930.
On October 18, 1948, Mary Johnston Spears filed a petition for partition by lici-tation of the 140 acre tract that she and her deceased husband had purchased, which was then held by her and Wiley Johnston. The property was sold at a sheriff’s sale on December 13, 1948, to C.W. Wofford. Mary and Wiley split the proceeds of the sale. Two days later, Wofford sold the property back to Mary, reserving timber rights.
After Mary reacquired the property from Wofford, she sold several small portions of the land. These sales reduced the size of the tract in question to 126 acres. Then, on August 20, 1951, Mary and her husband Jessie Spears executed an act of sale purporting to convey the tract to their son Forrest Wade Spears, for $400 and other good and valuable consideration. Mary and Jessie reserved the usufruct of the land. Defendant Forrest Wade Spears was in the armed services, stationed away from home, at that time. A correction deed was filed on September 15, 1952, by Jessie and Mary Spears. This deed confirmed and ratified the original conveyance, but added that Jessie and Mary reserved timber and mineral rights. The amendment also declared that Forrest Wade Spears had performed past services for his parents valued at $2000.
Jessie and Mary continued to reside upon the tract in question until several years ago. In their old age, failing health resulted in their placement in a nursing home. Jessie predeceased Mary, and Mary died *199 shortly thereafter in 1982. sion has not been opened. Mary’s succes-
Forrest Wade Spears apparently has lived with his parents on the land deeded to him at various times since 1952. He has lived elsewhere at other times.
In the trial court, Wiley Johnston attacked the validity of the conveyance to Forrest Wade Spears by parol evidence. He testified, and presented witnesses who testified, that the conveyance to Forrest Wade Spears was a sham transaction. Irma Smith, who lived on one of the parts of the original 140 acre tract sold by Mary Spears before the disputed conveyance, testified that Forrest Wade Spears had not performed services for his parents, and that, to her knowledge, he had never paid for the land. She testified that Mary Spears treated the land as her land, and that Mary and Jessie supported themselves from Jessie’s pension and timber sales and other income derived from the property.
Irma Smith’s son, Ronald, corroborated the testimony of his mother. He testified that Mary Spears told him that she was “fixing the sale” so that Forrest Wade Spears, her only natural child, would receive the property after her death. Ronald Smith testified that Mary Spears did not want her step-children or any other person except Forrest Wade Spears to have the tract in question.
Defendant Forrest Wade Spears presented testimony to show that he had performed services for his parents. Marvin Baggett, who had owned a sawmill at which Forrest Wade Spears had been employed while a minor, testified that defendant’s wages were used by Jessie and Mary Spears to support themselves.
Pat Pique, a co-worker of defendant at the sawmill, testified that Forrest Wade Spears used his earnings to buy groceries for the family. He also testified that defendant’s father would occasionally pick up defendant’s pay check.
Forrest Wade Spears introduced into evidence a list purporting to be a record kept by his mother of payments by defendant on the tract in question. Defendant also introduced into evidence money order receipt stubs, claiming that these stubs, allegedly signed by his mother, illustrate his payment of at least part of the purchase price.
The trial judge found that the sale was a sham transaction. He found that no consideration of either cash or services had been rendered by defendant. He did not believe that the signature on the money order receipt stubs matched the signature of Mary Spears on other documents in evidence. The trial judge found that Mary and Jessie Spears may have used money earned by defendant during his minority, but that the “groceries” purchased with such money were consumed by defendant, too, and, further, that defendant was cared for by his parents. The trial judge found that Mary and Jessie Spears had supported themselves and had performed services for themselves. He found that defendant had done nothing for his parents beyond that which most children do for their parents. He further found no connection between cash paid or services rendered by defendant (if any) and the purported sale. The trial judge found that the conveyance of the tract in question was a simulated sale. Therefore, the property never left the patrimony of Mary (and Jessie) Spears.
ISSUE
Defendant contends that the trial judge erred in ruling that the sale was a simulation. Defendant contends that the transaction was a valid sale, with payment of stated consideration; or, in the alternative, that the purported transfer constituted a remunerative donation.
DISCUSSION
Civil Code article 2239 provides, in part: “[FJorced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the [legitime].”
Under this article, the effect is not to return conveyed or donated property to *200 a succession, but to declare that such property, in reality, never left the patrimony of the decedent. This article and its effect should not be confused with Civil Code article 2444, under which a sale of immovable property by parents to children for less than one-fourth of the property’s fair market value at the time of sale may be attacked by forced heirs. Under article 2444, the transfer from decedent’s patrimony is admitted, but the sale is attacked as, in reality, a donation of property subject to collation. Similarly, Civil Code article 1248 provides that a sale to a child at a low price may be attacked by forced heirs. Again, there is no denial of an actual transference of property, but the advantage bestowed by a sale at a low price is treated as a donation subject to collation.
The trial judge in this ease found that the sale was simulated. Therefore, no transfer actually occurred. He based his finding on a careful weighing of the evidence, both documentary and testimonial. Clearly, he believed the testimony that supported plaintiff. He also found no connection between the documentary evidence purporting to show at least partial payment of the purchase price and the sale transaction. Moreover, he doubted the validity of some of defendant’s documentary evidence.
In Succession of Guin v. McDaniel, 344 So.2d 1149 (La.App. 3d Cir.1977), this court considered a similar conclusion by a trial judge faced with similar conflicting evidence. Therein, we found that the weighing of evidence by a trial judge in this type of case essentially yields a factual determination as to the reality and validity of a transaction. Id. at 1151. We held that such a determination will not be disturbed on appeal unless it is clearly wrong, in light of all the evidence. Id. at 1151. In the case we address today, we also uphold the determination of the trial judge. The record, as a whole, supports a finding that the purported conveyance of the tract in question was, in fact, a simulation and a sham transaction, supported by no consideration, either in cash or in services. See also Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
We further note that defendant’s parents lived out the remainder of their lives on the tract in question, using it and treating it as if they fully owned it. Defendant, when between jobs or faced with necessitous circumstances, would occasionally reside in a trailer-home on the property. This could not constitute delivery or transference of the property. We attach no special significance to defendant’s intermittent residence on his parents’ property; it is not at all unusual for parents to aid their children in this fashion, even children long past the age of majority.
Because of our determination that the sale by Mary and Jessie Spears was a simulation, and that the land never left their patrimony, we need not address the arguments by plaintiff and defendant concerning disguised donations, remunerative donations, etc. Plaintiff’s further contention that the tract in question is the separate property of Mary Spears may not properly be considered in this proceeding.
The purported sale of land by Mary and Jessie Spears to Forrest Wade Spears was a simulation. No actual transfer occurred. Based on the above reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.