John A. SCHEXNIDER

v.

McDERMOTT
INTERNATIONAL, INC., et al.

Civ. A. No. 81–2358–LC.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

July 7, 1988.

Joseph J. Weigand, Jr., Weigand, Weigand & Meyer, Houma, La., Nick Pizzolatto, Jr., Caskey & Pizzolatto, Lake Charles, La., for plaintiff.

James B. Doyle, Henry E. Yoes, III, Woodley Barnett, Williams and Fenet, Lake Charles, La., for defendants.

## MEMORANDUM RULING

**VERON, District Judge.**

In this slip and fall case of far-reaching implications, the court is called upon to decide important issues regarding the Louisiana Direct Action Statute[1] on a Motion for Summary Judgment filed by defendant Insurance Company of North America (INA).

### I. BACKGROUND

The plaintiff, John A. Schexnider, is an American citizen domiciled in Lake Charles, Louisiana. He alleges an injury occurring on April 21, 1981 while serving as a crewmember of the Derrick Barge 21, an Australian flag vessel which was performing work in the Java Sea off the coast of Indonesia. Schexnider was employed at the time by Panamanian corporation McDermott International, Inc. pursuant to an employment contract entered in New Orleans on March 6, 1981 which called for him to work "in the Southeast Asia Area."

As defendants, the plaintiff has named his employer, McDermott International, Inc.; the vessel charterer, McDermott Southeast Asia, Pte., Ltd.; the vessel owner, McDermott Australia, Ltd.; the parent corporation, McDermott, Inc.; and INA as liability insurer of "all McDermott companies."

1. La.Rev.Stat.Ann. 22:655 (West 1978).

2. 817 F.2d 1159 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

3. 817 F.2d at 1164.

4. The Statute provides:

No policy or *contract of liability insurance* shall be *issued or delivered in this state,* unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors mentioned in Revised Civil

In *Schexnider v. McDermott,*[2] the Fifth Circuit affirmed this court's holding that Australian law, rather than the Jones Act, applies to the alleged tort. In the same opinion the Fifth Circuit also reversed this court's decision that the doctrine of *forum non conveniens* was applicable and remanded the case with instructions to retain jurisdiction and to apply Australian law to Schexnider's maritime claim.[3]

### II. THE DIRECT ACTION CLAIM

INA advances two arguments for summary judgment in its favor. The first argument is that the Direct Action Statute does not apply on its face because the accident did not occur in Louisiana, and the liability policy was neither issued nor delivered in Louisiana. The second argument is that whether or not the statute purports to apply, this case is governed by Australian law which grants no direct action and consequently the plaintiff cannot avail himself of the Louisiana statute.

### A. *Facial Application of the Direct Action Statute*

On the face of the statute creating it, the Louisiana direct action is available to a claimant when the policy was issued or delivered in Louisiana, or the accident or injury occurred in Louisiana.[4] In this case

Code Article 2315, or heirs against the insurer. *The injured person* or his or her survivors or heirs hereinabove referred to, at their option, *shall have a right of direct action against the insurer within the terms and limits of the policy;* and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. *This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana.* Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State. It is the intent of this Section that any

the accident and injury occurred in the Java Sea around the globe from Louisiana, and the INA policy was issued outside Louisiana, probably at INA's Pennsylvania headquarters. The bone of contention is whether the policy was delivered in Texas or in Louisiana. The material facts are not in dispute.

The policy in question pertained to the period from April 1, 1981 to April 1, 1982. Its cover sheet gives the name of insured as being "McDermott Incorporated, et al" having a New Orleans address. It is a "standard worker's compensation and employer's liability policy" covering broadly all employees in offshore activity. The "et al" refers to one hundred and one subsidiaries, affiliates, joint ventures, divisions, branches and employee benefit plans worldwide in the McDermott, Inc. family of companies whose general headquarters is in New Orleans.

The original physical copy of the policy was initially sent to Adams & Porter Associates, Inc. of Houston, McDermott, Inc.'s longtime insurance agent. Pursuant to the instructions of J. Burns Smith, who was head of Risk Management for the entire McDermott organization in New Orleans, James P. Glotfelty of Adams & Porter sent or took the original policy to the office of Edward M. Nelson, Jr. at Hudson Engineering Corporation in Houston. Hudson Engineering is one of the McDermott subsidiaries covered by the policy.

Nelson, whose job entailed no insurance or risk matters, had been notified by Smith in New Orleans that Nelson would be receiving some McDermott liability policies for safekeeping. Pursuant to further instructions of Smith, by a letter dated July 3, 1980, Nelson promptly forwarded photocopies of the policies to McDermott's Corporate Insurance Risk Management Office in New Orleans, where they were to be used, and locked the originals in his credenza. Smith's letter explained that "it has been determined to be in the Corporation's interest to take possession of Liability-oriented insurance policies, binders, and endorsements in the Houston offices of McDermott." A memorandum of July 21, 1982 (i.e., after the period of the policy concerned here) from Smith to nine individuals, including Nelson, continues this procedure and clarifies its aim, which was "that those policies having liability coverages *not* be issued or delivered in Louisiana." [5]

Smith's instructions to Glotfelty, Nelson and others were given on the advice of Arden J. Lea, corporate counsel for McDermott, Inc. Lea's purpose in giving that advice was to avoid the application of the Louisiana Direct Action Statute in those instances where the accident did not occur in Louisiana. His two primary concerns regarding the statute were prejudice to McDermott's ability to limit vessel liability

---

action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State.

It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.

La.Rev.Stat. 22:655, *supra* at n. 1 (emphasis added). A detailed discussion of the statute, its history and jurisprudence is found in Johnson,

*The Louisiana Direct Action Statute,* 43 La.L. Rev. 1455 (1983).

**5.** The letter and memorandum are included as exhibits to the deposition of Nelson. The memorandum suggests that all liability coverages be certified by area risk managers who would notify Adams & Porter that all policies and endorsements for these coverages *not* be delivered in Louisiana; that Adams & Porter would retain the originals of the policies and endorsements, promptly copy them and forward the copies to McDermott, Inc.'s office of Corporate Insurance Risk Management (CIRM) in New Orleans; that Adams & Porter would deliver several times a year the accumulated originals to Nelson at Hudson Engineering in Houston; and that annually a representative from the Casualty–Property or Marine & Aviation departments at CIRM would go to Houston to review the originals and arrange files.

under then-existing law [6] and the prospect of a *forum non conveniens* defense being defeated on the grounds that the suit, being a direct action peculiar to a few jurisdictions, could not be brought elsewhere. Therefore, he recommended to Smith and to Assistant General Counsel Frank Allen that McDermott policies be delivered to Hudson Engineering in Houston and that Babcock & Wilcox policies be delivered in that subsidiary's Barberton, Ohio office.

The plaintiff contends that under these facts the policy was, in legal effect, delivered in New Orleans, Louisiana and that the Texas "delivery" was nothing more than a hollow and ineffectual subterfuge.

Our research reveals but a single case where the "constructive delivery" argument was made, namely *Signal Oil & Gas Co. v. Barge W-701.*[7] Ironically McDermott, as J. Ray McDermott and Company, Inc., was on the other side of the argument in that case. The dispute involved an offshore pipeline rupture caused by a McDermott subcontractor. McDermott had agreed to indemnify its principals, who owned the pipeline, but the subcontractor, Williams–McWilliams Company, Inc., had not agreed to indemnify McDermott. Williams–McWillaims, the only negligent party, succeeded in limiting its liability to the $450,000 value of the tug whose anchor ruptured the pipeline. McDermott's indemnification liability was in excess of a million dollars.

At that time, limitation of liability was held a strictly personal defense unavailable to the insurer in a direct action.[8] Williams–McWilliams had primary and first excess policies totalling $500,000 which were amenable to direct action since they had been delivered directly to that Louisiana-based company.

Williams–McWilliams was also covered, as a subsidiary of a subsidiary of Zapata Norness, by a five million dollar umbrella liability policy issued and delivered to the parent corporation at its Houston headquarters and covering dozens of Zapata companies and divisions worldwide. McDermott's argument was that since the umbrella policy expressly continued the coverages of the first two Williams–McWillaims policies which were delivered in Louisiana, it too was "constructively delivered" in Louisiana. Both the district court and the court of appeal rejected the argument out of hand as having no basis in Louisiana law.[9] That holding did justice because the delivery of the umbrella policy to the parent Zapata Norness in Texas was wholly downstream in effect vis-a-vis the subsidiaries. The policy was delivered to the location from which it was procured and where it would be administered, that is, the parent corporate headquarters.

It is the reverse in the present case. Unlike the Zapata umbrella policy, the Houston delivery here was nothing other than a fiction. As soon as it was received in Houston, copies were made to be sent to and used in New Orleans at McDermott's Corporate Insurance Risk Management Office which oversaw not only McDermott, Inc.'s claims but also the major claims against McDermott subsidiaries the world over, while the originals were locked in a

---

**6.** Lea's concern was apparently for prejudice to the insurer's ability to limit liability rather than McDermott's. The Fifth Circuit had formerly held that interposition of the Limitation of Liability Act, 46 U.S.C. §§ 181–196, was a defense "strictly personal" to the shipowner under Louisiana law and was therefore unavailable to an insurer sued by direct action. *Olympic Towing Corp. v. Nebel Towing Co.,* 419 F.2d 230 (5th Cir.1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970). That holding was overruled in *Crown Zellerbach Corp. v. Ingram Industries, Inc.,* 783 F.2d 1296 (5th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986) which holds valid under Louisiana law a policy provision fixing the insurer's liability at that of the insured when the latter's liability is judicially limited to the value of the vessel.

**7.** 468 F.Supp. 802 (E.D.La.1979), *affirmed in part, reversed in part on other grounds,* 654 F.2d 1164 (5th Cir.1981), *cert. denied,* 455 U.S. 944, 102 S.Ct. 1441, 71 L.Ed.2d 656 (1982). Although the record does not definitively show it, apparently Mr. Lea's superior, Mr. Allen, participated in *Signal Oil* at the district court level on McDermott's behalf.

**8.** See note 6, *supra.*

**9.** 468 F.Supp. at 816, 654 F.2d at 1175.

credenza and forgotten.[10] The Houston delivery here, unlike that in *Signal Oil,* was to be wholly upstream in effect, and was orchestrated specifically to avoid the Direct Action Statute despite the fact that the coverage was procured by and the policies to be used by the parent company in Louisiana.

Under Louisiana law, a transaction which is intended to have no effect between the parties is classified as an absolute simulation.[11] A declaratory action, called an action in declaration of simulation, is allowed to third persons, typically forced heirs or creditors, whose interests are impaired by the sham.[12] Juridical facts (events having prescribed legal effects) deserve the same scrutiny as juridical acts such as contracts, when they are charades brought about solely for legal effects as to third persons and have no independent significance.

 This plaintiff alleging injury by the fault of INA's insureds has standing to assert the simulation in fraud of his rights under the Direct Action Statute. So far as the evidence shows, it made no difference as between McDermott and INA whether the policy was delivered in Houston or New Orleans. That the sole purpose of the Houston charade was to defeat the rights of direct action plaintiffs is clear. While there is no evidence that INA knowingly participated in the hoax, neither is there any indication that INA placed any special

reliance on this particular policy being issued through the agency in Houston which had handled McDermott's insurance requirements for some thirty-seven years and had previously delivered McDermott policies in Louisiana. For purposes of this suit the policy is deemed to have been delivered in Louisiana. Consequently, the Direct Action Statute on its face is applicable herein.

### B. *Effect of Choice of Australian Law on the Direct Action*

 The choice of law made by this court and again by the court of appeals pertained to whether the plaintiff had a cause of action under the Jones Act as opposed to a cause of action under the liability laws of Australia, Panama, or some other jurisdiction. In a Louisiana direct action the only significance of the law applicable to the underlying tort is whether or not there is liability on the assured, and in what amount.[13] In this case under the court's maritime jurisdiction the rule of *Wilburn Boat* [14] remains our guide, and the insurance law of a state with substantial connexity to the policy in question will be given effect so long as it does not conflict with an established rule of admiralty.[15] The law of admiralty has a long history of coexistence with the Louisiana Direct Action Statute, and no conflicting admiralty rule has been cited to the court in this instance.

---

**10.** Nelson left behind, in place, whatever files existed in his office when he retired at the end of 1982. When asked to produce the policy for discovery herein, he went to the central file room at Hudson Engineering and asked for the "left over" files. He was directed to the "Nelson files" which contained the original policy.

**11.** La.Civ.Code Art. 2026 (Rev.1984).

**12.** *See, e.g., Johnston v. Spears,* 459 So.2d 197 (La.App. 3rd Cir.1984) (adopted son's attack of spurious sale to natural son); *Heirs of Wood v. Nicholls,* 33 La.Ann. 744 (1881) (administrator's improper purchase from estate through "straw man" invalidated); *see also,* Civ. Code Art. 2026, comment (c).

**13.** *See, Crown Zellerbach Corp. v. Ingram Industries, Inc., supra,* 783 F.2d at 1303–04 (effect of the Direct Action Statute is to mirror in the

insurer the liability of the insured under whatever liability law is applicable); *see also, Burke v. Massachusetts Bonding & Insurance Co.,* 209 La. 495, 24 So.2d 875 (1946) (direct action court could not look to Louisiana tort law to circumvent Mississippi interspousal immunity); *Mock v. Maryland Casualty Co.,* 6 So.2d 199 (La.App. Orl.Cir.1942) (absence of Texas wrongful death action for negligent death occurring there prevented direct action recovery despite existence of wrongful death action in Louisiana).

**14.** *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

**15.** *Id.* at 313–14, 75 S.Ct. at 370–71; *Ingersoll–Rand Financial Corp. v. Employers Insurance of Wausau,* 771 F.2d 910, 911–12 (5th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 573 (1986).

Other avenues of analysis arrive at the same destination. If the choice of law is seen as embracing the whole of Australian law including insurance law, Australian choice of law rules would also apply.[16] Australian courts employ an interest analysis similar in most respects to those of federal maritime and Louisiana law in regard to obligations surrounding contracts, whether bargained for or implied in law.[17] Accordingly, effect would be given to the Louisiana statute by virtue of the same factors which compel the conclusion that the policy was delivered in Louisiana for direct action purposes. Under the choice of law principle of *renvoi*, when the chosen law points back to forum law the search is over.[18] Due to the federalist policy of *Wilburn Boat*, it makes no difference whether the Australian analysis would indicate American maritime law or Louisiana law directly.

The direct action could also be seen as a state law claim pendent to the maritime claim. Although the *Wilburn Boat* doctrine generally obviates the need for this analysis when insurance is at issue, pendent jurisdiction, usually associated with federal questions, is recognized in the context of admiralty.[19] The Supreme Court has characterized the direct action as a separate cause of action under Louisiana law,[20] and under the "common nucleus of operative fact" criterion of *United Mine Workers v. Gibbs*,[21] the direct action is a perfect candidate for pendent jurisdiction over a state law claim.[22]

Finally, if the direct action is seen as an action on an insurance contract,[23] there is independent admiralty jurisdiction as in all actions on marine policies.[24] Due to the public liability nature of the coverage and delivery in Louisiana, the direct action would lie.[25]

## III. CONCLUSION

The plaintiff's direct action is held viable due to delivery of the liability policy in Louisiana notwithstanding the attempted Texas delivery and the application of Australian law to the underlying tort. That

16. *See, Restatement 2d, Conflict of Laws*, § 8 and comment d. (American Law Institute 1971); *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) ("whole law" includes choice of law rules).

17. The affidavit of Professor James R. Crawford, Australian barrister-at-law, is in the record as Plaintiff's Exhibit 8 pursuant to Fed.R.Civ. Proc. 44.1. In it, Professor Crawford uses an interest analysis in regard to the employment contract and concludes that Australian courts would apply Louisiana law to that contract and to implied warranties arising thereunder.

18. *See, Restatement 2d, Conflict of Laws, supra*, § 8(2); *Continental Casualty Co. v. Canadian Universal Insurance Co.*, 605 F.2d 1340, 1345 (5th Cir.1979) (where pre-empting federal law points back to state law on an insurance issue, state law is applied).

19. *See, e.g., Austin v. Unarco Industries, Inc.*, 705 F.2d 1 (1st Cir.1983); *Syndicate 420 at Lloyd's London v. Glacier General Assurance Co.*, 633 F.Supp. 428 (E.D.La.1986) (pendent party); *Lingo v. Great Lakes Dredge & Dock Co.*, 638 F.Supp. 30 (E.D.N.Y.1986); *Morse Electro Products Corp. v. S.S. Great Peace*, 437 F.Supp. 474 (D.N.J.1977) (pendent claim).

20. *Lumbermen's Mutual Casualty Co. v. Elbert*, 348 U.S. 48, 51, 75 S.Ct. 151, 153, 99 L.Ed. 59 (1954).

21. 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

22. One Fifth Circuit Judge opined that pendent jurisdiction would not be available over a direct action claim, but that assessment was based on the now-discarded "single cause of action" test of *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. (1933). *See, Elbert v. Lumbermen's Mutual Casualty Co.*, 202 F.2d 744 (5th Cir.1953) (Rives, J. dissenting from denial of petition for rehearing).

23. The second paragraph of the statute is phrased in third-party beneficiary terms, see note 4, *supra*. However, this analogy is criticized as simplistic and inadequate by Professor Johnson. *See, Johnson, supra* at note 4, 43 La.L.Rev. at 1456 and n. 2.

24. *Wilburn Boat, supra*, 348 U.S. 310 at 313, 75 S.Ct. 368 at 370; 1 *Benedict on Admiralty*, § 242 (Matthew Bender 1985).

25. *See, Coleman v. Jahncke Service, Inc.*, 341 F.2d 956, 960–61 (5th Cir.1965), *cert. denied*, 382 U.S. 974, 86 S.Ct. 538, 15 L.Ed.2d 465 (1966) (Direct Action Statute applies to hull policy which was also policy of public liability insurance and is not excluded under La.Rev.Stat.Ann. 22:611).

being the case, the plaintiff's argument asserting the application of the Direct Action Statute by reason of a warranty allegedly arising out of the employment contract signed in New Orleans need not be addressed. INA is not entitled to summary judgment as a matter of law. Accordingly, the motion is DENIED.