United States Court of Appeals,

Fifth Circuit.

No. 91-3220.

Jonathan P. GRUBBS, Plaintiff-Appellant,

v.

GULF INTERNATIONAL MARINE, INC., et al., Defendants-Appellees.

Feb. 7, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before KING, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Jonathan P. Grubbs appeals the district court's grant of summary judgment dismissing his Jones Act/general maritime law action against his employer, Gulf International Marine, Inc. (Gulf), and its insurer, American Steamship Owners' Mutual Protection and Indemnity Association, Inc. (American Steamship). We certified to the Louisiana Supreme Court the question of whether a P & I insurance policy is a marine insurance policy exempt from application of Louisiana's Direct Action Statute. The Louisiana Supreme Court granted certification and answered that question in the negative. We now apply that ruling in our disposition of this appeal. We vacate in the district court's order granting summary judgment and remand for further proceedings.

I.

The summary judgment evidence revealed the following undisputed facts:

In 1986, Jonathan Grubbs was injured in Texas territorial waters while employed as an engineer on the tug, the M/V THOMAS HERBERT. Gulf, Grubbs' Louisiana-based employer, was insured under a marine protection and indemnity (P & I) policy issued by American Steamship. American Steamship has its only U.S. office in New York, New York. It delivered the policy to Gulf's broker, Seahawk International, Inc. (Seahawk), at Seahawk's New York office. The principals of Gulf made several requests to American Steamship and Seahawk for a copy of the policy, but neither complied with these requests. American Steamship and Seahawk did however furnish

certificates of insurance to Gulf's customers upon Gulf's request.

Grubbs filed suit against Gulf and American Steamship in December 1986 to recover for his injuries. American Steamship filed a motion for summary judgment on a number of grounds. American Steamship argued first that it was exempt from application of the Direct Action Statute because the P & I policy it issued to Gulf was an "ocean marine" insurance policy within the meaning of an exception to the Direct Action Statute. It also argued that it was not amenable to suit under the Louisiana Direct Action Statute because the accident occurred outside Louisiana and the policy was neither written nor delivered in Louisiana. American Steamship further contended that it committed no independent tort of failure to pay maintenance and cure because, under the terms of Gulf's P & I policy, American Steamship was only obligated to reimburse Gulf for maintenance and cure if Gulf actually paid to an injured employee. According to American Steamship, Gulf had never paid maintenance and cure to Grubbs.

Grubbs argued to the district court that a material issue of fact was presented on whether the policy had been constructively delivered to Gulf in Houma, Louisiana, and thus subject to the Direct Action Statute. He also argued that American Steamship's refusal to deliver the policy in Louisiana as requested was a strategy to avoid the Direct Action Statute and that such conduct should not be allowed to defeat application of the statute.

The district court concluded that American Steamship's policy was not delivered in Louisiana and thus the Direct Action Statute did not apply. Based on this conclusion, the district court granted American Steamship's motion for summary judgment. The defendants later informed the court that Gulf's corporate charter had been dissolved upon the completion of its bankruptcy proceedings and that Gulf was no longer in existence. The court then dismissed the action against Gulf, the only remaining defendant, because the corporate entity had been dissolved.

Following argument, we reversed the district court's dismissal of Gulf, but we affirmed the district court's dismissal of American Steamship because the P & I policy issued to Gulf was an "ocean marine" policy exempt from application of the Direct Action Statute. Grubbs, in his

application for rehearing, pointed out two contrary Louisiana appellate court decisions on this issue.[1]

We then granted rehearing, withdrew the opinion and certified to the Louisiana Supreme Court the following question of law:

> Whether the Louisiana Direct Action Statute, LSA-R.S. 22:655 (West Supp.1992) permits an injured party to maintain a direct action against a marine protection and indemnity insurer.

*Grubbs,* 985 F.2d 762, withdrawing 975 F.2d 186 (5th Cir.), certification accepted, 616 So.2d 691 (La.1993).

In response to our certified question, the Louisiana Supreme Court held that the Louisiana Direct Action Statute permits an injured party to maintain a direct action against a marine P & I insurer. *Grubbs,* 625 So.2d 495 (La.1993). Because the Direct Action Statute applies to Gulf's P & I policy, we must now determine whether the facts surrounding Grubbs' accident or the relationship between American Steamship and its insured permit Grubbs to maintain this direct action.

## II.

## A.

The Louisiana Direct Action Statute permits an action against an insurer of a tort-feasor if the plaintiff can establish one of the following:

(1) the accident occurred in Louisiana;

(2) the policy was written in Louisiana; or

(3) the policy was delivered in Louisiana.

LSA-R.S. 22:655[2]; *Webb v. Zurich Insurance Co.,* 251 La. 558, 205 So.2d 398 (1967). In this case, the parties agree that the policy was neither written in Louisiana nor physically delivered in Louisiana.

---

[1]See *Hae Woo Youn v. Maritime Overseas Corp.,* 605 So.2d 187 (La.App. 5th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993), writ granted, 609 So.2d 239 (La.1992), vacated in part on other grounds, 623 So.2d 1257 (La.1993), and *Treadway v. Certain Underwriters at Lloyds,* No. 92-C-1500 (La.App. 4th Cir. Sept. 15, 1992).

[2]LSA-R.S. 22:655 provides in pertinent part:

> This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana.

Grubbs asserts, however, that the Direct Action Statute should apply for two reasons. First, Grubbs argues that American Steamship constructively delivered the policy to its insured in Louisiana. Second, Grubbs argues that American Steamship's failure to pay maintenance and cure benefits is an injury which occurred in Louisiana.

B.

Grubbs argues that he meets the requirements of the Direct Action Statute because the policy was constructively delivered in Louisiana. Grubbs contends that Gulf made several requests for a copy of the policy from American Steamship and American Steamship fraudulently refused to comply with these requests to avoid triggering Louisiana's Direct Action statute. In support of his argument, Grubbs points to *Schexnider v. McDermott Int., Inc.,* 688 F.Supp. 234, 236-38 (W.D.La.1988), where a policy insuring McDermott International and all of its subsidiaries was delivered to McDermott's agent in Houston. The agent delivered the policy to a McDermott subsidiary in Houston; copies of the policy were then forwarded by the subsidiary to McDermott's corporate headquarters in New Orleans. The summary judgment evidence was uncontradicted that the delivery was orchestrated solely to avoid application of Louisiana's Direct Action Statute.

The court regarded the Houston delivery as "nothing other than fiction," and stressed that the coverage was procured by and the policies were to be administered by the parent corporation in New Orleans. *Id.* at 237. The court therefore treated the Texas delivery as a sham and deemed the policies delivered in Louisiana for purposes of the Louisiana Direct Action Statute.[3] *Id.*

In its opinion responding to our certified question, the Louisiana Supreme Court strongly suggested that when an insurer fraudulently refuses to deliver a policy in Louisiana for the purpose of evading the Direct Action Statute, the policy will be considered delivered in Louisiana for purposes

---

[3]The Schexnider court distinguished *Signal Oil & Gas Co. v. Barge W-701,* 654 F.2d 1164, 1175 (5th Cir.1981), where the court held that delivery to a company's parent outside of Louisiana did not amount to delivery under the Direct Action Statute. The Schexnider court noted that the policy in Signal Oil was delivered to the location where it was procured and where it would be administered—the parent corporate headquarters. Conversely, the policy in *Schexnider* was delivered to the Houston subsidiary and copies were immediately sent to the New Orleans parent headquarters, where claims arising under the policy would be administered.

of the Direct Action Statute.[4]

The Gulf owners testified that they repeatedly asked American Steamship to furnish it with a copy of the P & I policy. Gulf's inquiries were prompted by requests from the bankruptcy court presiding over Gulf's bankruptcy proceedings in 1984. Neither American Steamship nor Gulf's broker, Seahawk, responded to these requests. The only explanation American Steamship offers for its failure to respond is that it generally deals only with brokers, not individual insureds. American Steamship claims that in accordance with this established procedure, it had previously delivered a policy to the broker, Seahawk, in New York. American Steamship offers no explanation for establishing this procedure. More importantly, American Steamship does not explain why it rigidly adheres to such a practice when dealing with a simply and easily satisfied request from its insured for a copy of the insurance policy. American Steamship's unexplained refusal to provide a copy of the policy during Gulf's pending bankruptcy proceedings lends weight to Grubbs' argument that American Steamship's refusal was based on its desire to avoid the Direct Action Statute. American Steamship argues that its policy is an indemnity policy, requiring the insured to pay the loss before claiming reimbursement or indemnity from American Steamship. According to American Steamship, if its insured is insolvent and unable to pay the loss, American Steamship's obligation to pay is never triggered. If it was amenable to suit under the Direct Action Statute, however, American Steamship could be held directly liable to an injured party and would not be able to rely on this indemnity argument. We conclude that Grubbs has raised a genuine issue of material fact as to whether American Steamship's refusal to deliver the P & I policy was motivated by a desire to avoid the Direct Action Statute. We must therefore remand this case for trial of this issue.

C.

---

[4]In a footnote, the Louisiana Supreme Court stated:

> [Grubbs] argues that American Steamship's failure to deliver the policy in Louisiana was calculated to avoid the Direct Action Statute and that such conduct should not be allowed to defeat the application of the statute. Although on the facts presented we find Grubbs' argument compelling, we decline to address issues beyond the scope of the precise legal question certified.

*Grubbs,* 625 So.2d at 495.

In the alternative, Grubbs relies on *Herbert v. Aetna Casualty and Surety Co.,* 400 So.2d 695 (La.App. 1st Cir.1981), to support his argument that a tort occurred in Louisiana when Gulf and American Steamship failed to pay maintenance and cure. In Hebert, an intermediate Louisiana appellate court noted that when an employer or its insurer capriciously fails to pay maintenance and cure benefits, an "accident" occurs in Louisiana if the claim was administered in Louisiana and the insurer's representative who denied maintenance and cure was based in Louisiana. *Id.* at 698. The district court did not address this argument. The district court on remand should consider this contention.

## III.

The district court also dismissed Grubbs' case against Gulf because the company's corporate charter was dissolved following the conclusion of its bankruptcy proceedings. The court noted that there was no longer a defendant in the case. We disagree with that conclusion.

Louisiana law provides that "upon issuance of the certificate of dissolution, the corporate existence shall cease as of the effective date stated in the certificate, except for the sole purpose of any action or suit commenced theretofore by, or commenced timely against, the corporation." L.S.A.-R.S. § 12:148(C). Actions against dissolved corporations do not abate, even after dissolution. In *River Cities Constr. Co. v. Barnard & Burk, Inc.,* 413 So.2d 666 (La.App. 1st Cir.1982), the plaintiff corporation was dissolved, but on appeal the Louisiana appellate court remanded the case for substitution of all the proper legal successors to the corporation as plaintiffs. The parties in the case did not argue, and we state no position as to how this case should proceed. We decide only that Grubbs is entitled to continue his suit against Gulf's proper successor irrespective of the validity of his direct action against American Steamship.

## IV.

For reasons state above, we vacate the judgment of the district court and remand this case to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.