IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-4697

_____


WESTINGHOUSE CREDIT CORP.,
                          Plaintiff, Third Party
                          Plaintiff,

                versus

M/V NEW ORLEANS, her engines, tackle,
   apparel, etc., in rem, ET AL.,
                          Defendants,

KENNER MARINE & MACHINERY, INC., ET AL.,
                          Defendants-Appellees,

POWER SYSTEMS DIESEL, INC., and
       VENER MARINE, LTD.,

                          Defendants, Third Party
                          Plaintiffs-Appellees

                versus

DOUGLAS MARINE SERVICE, INC.,

                          Third Party Defendant,

                versus

ATLAS ASSURANCE CO.,
   JNT FLEET, INC.,

                          Third Party Defendants-
                          Appellants.


_____

Appeals from the United States District Court
    for the Western District of Louisiana
_____

(November 23, 1994)

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMoss, Circuit Judge:

I.

Kenner Marine & Machinery, Inc. agreed to sell the dredge NEW ORLEANS to Willie C. Starling, Sr. and Starling Enterprises, Inc. Westinghouse Credit Corp. financed $600,000 of the purchase price and secured its loan with a preferred ship mortgage. Westinghouse agreed with Kenner Marine that, if Starling defaulted, Westinghouse would foreclose on the NEW ORLEANS and purchase the dredge at a federal marshal's sale. Kenner Marine agreed to repurchase the dredge from Westinghouse for the balance owed by Starling to Westinghouse plus costs expended by Westinghouse in connection with the sale.

Starling defaulted. Westinghouse sued to enforce its lien on the NEW ORLEANS. The court ordered the dredge seized and placed in custody. Douglas Marine Service, Inc. became consent custodian of the NEW ORLEANS, and in September 1985, J.N.T. Fleet, Inc. towed the dredge from Intracoastal City, Louisiana to the Douglas Marine facility near Baldwin, Louisiana. The NEW ORLEANS sustained water damage both while being towed and later during the lengthy storage at the Douglas Marine facility.

Westinghouse purchased the NEW ORLEANS at the marshal's sale. When Westinghouse demanded that Kenner Marine repurchase the dredge pursuant to the prior agreement, Kenner Marine refused. Westinghouse sued Kenner Marine for specific performance of the agreement to repurchase the NEW ORLEANS, or, in the alternative, for payment of damages.

2

After settlement of the consolidated lien and repurchase cases, only J.N.T. and its insurer, Atlas Assurance Co., remained as defendants in the litigation. Kenner Marine, Power Systems Diesel, Inc., and Vener Marine, Ltd., the latter two companies having furnished labor and materials for repair of the dredge, received an assignment of rights and sued J.N.T. and Atlas for negligence in towing.

The district court found J.N.T. and Atlas liable for $206,320 in damages and refused to credit J.N.T. and Atlas for the amount already paid by the settling parties. J.N.T. and Atlas appeal. We affirm.

## II.

Prior to trial, Atlas moved to dismiss, claiming that the ocean marine insurance policy issued to J.N.T. was not a proper subject for direct action in Louisiana. See LA. REV. STAT. ANN. §§ 22:611 (marine insurance exemption) & 22:655 (direct action statute) (West 1978 & Supp. 1992). By recent decision of the Louisiana Supreme Court and this Court, the Louisiana statute exempting marine insurance from application of some provisions of the Louisiana Insurance Code does not limit an injured party's ability to maintain a direct action against an insurer under the Louisiana Direct Action statute. Grubbs v. Gulf Int'l Marine, Inc., 13 F.3d 168 (5th Cir. 1993); Grubbs v. Gulf Int'l Marine, Inc., 625 So.2d 495, 502-04 (La. 1993). Therefore, Atlas was not entitled to dismissal on this ground, and we affirm the district court's denial of that motion.

3

## III.

J.N.T. and Atlas argue that the $206,320 judgment rendered against them should have been reduced to reflect a pro tanto (dollar-for-dollar) credit for settlement funds paid by Douglas Marine and the hull insurers for damages during storage.  It is true that this Court had developed a settlement credit rule which requires full credit for amounts received in settlement from joint tortfeasors.  E.g., Rollins v. Cenac Towing Co., 938 F.2d 599 (5th Cir. 1990), cert. denied, 112 S.Ct. 1242 (1992); Hernandez v. M/V Rajaan, 841 F.2d 582 (5th Cir.), cert. denied, 488 U.S. 981 (1988). The U.S. Supreme Court, however, recently repudiated the pro tanto settlement approach in admiralty cases, adopting in its place a proportionate share rule.  McDermott, Inc. v. AmClyde, 114 S. Ct. 1461 (1994).  Under the proportionate share approach, the finder of fact must determine the total damages from all joint causes and the proportion of each tortfeasor's share of joint liability.  Although principles of joint and several liability survive, a nonsettling defendant cannot initially be assessed any amount of damages larger than his proportionate share of all damages as determined by his proportionate share of all liability.  Thus, under AmClyde, the nonsettling defendant is no longer entitled to a "credit" based on prior settlements.  Rather, under AmClyde, it is the plaintiff who takes the risk of either a poor settlement or a favorable settlement with other defendants.  However, the proportionate share rule, like its predecessor the pro tanto rule, applies only to cases in which there has been a settlement by a joint tortfeasor.

4

See generally, Id. (when plaintiff settles with joint tortfeasors, nonsettling defendant is entitled to credit for damages attributable to conduct of settling defendant); RESTATEMENT (SECOND) OF TORTS §§ 433A & 879. Thus, J.N.T. and Atlas are not entitled to call for the proportionate share rule in this case unless (1) they are joint tortfeasors with the settling defendants, and (2) the court determined damages based on the conduct of both J.N.T. and the settling defendants.

J.N.T. and Atlas claim that the required joint tortfeasor relationship does exist, because the damage at the dock masked any damage from the trip, erasing any basis for apportioning liability and making the two injuries indivisible. Kenner Marine and Power Systems, on the other hand, argue that this case involves two separate torts, one by J.N.T. during towage and one by Douglas Marine at the dock during storage. We agree with Kenner Marine and Power Systems. This is not a case in which there were two casualties closely related in time such that damage from one is indivisible from the other. J.N.T.'s tug, the MISS NORMA, picked up the dredge NEW ORLEANS at Intracoastal City in the late evening hours of September 18, 1985 and dropped her off in the early morning hours of September 20 at the Douglas Marine facility in Baldwin. During the voyage, the bow of the NEW ORLEANS apparently took on water as a result of being incorrectly pushed bow first rather than stern first by the MISS NORMA. The master on board the tug testified regarding how much water he saw in the hull of the dredge NEW ORLEANS during the tow. Several witnesses testified

5

concerning the condition of the dredge prior to the tow and the extent of damages immediately after the tow. Bradley, an experienced Kenner Marine dredge field technician, based his testimony on an inspection conducted September 20th, before the NEW ORLEANS had even been fully docked at Douglas Marine. If that were not enough, Webster, an experienced marine surveyor, visited the dredge NEW ORLEANS on November 16, shortly after the towing, and documented with pictures and reports the extensive damage caused by the near sinking while the vessel was under tow. The list of items damaged, which he prepared contemporaneously, became the basis for the damages awarded by the trial court. There was no allegation and no testimony in the record indicating that any of the damage alleged to have occurred at Douglas Marine occurred between September 20, when the dredge arrived, and November 16, when Webster conducted his survey.

Approximately one year after arrival of the dredge on Douglas Marine, when Kenner Marine sent a technician to retrieve an equipment manual from the NEW ORLEANS, it discovered that the dredge had taken on water several times while stored at Douglas Marine. As a result, Webster surveyed the vessel again in September 1986, taking pictures and producing a detailed report.

The photos taken by Webster in November 1985 and September 1986, along with his reports and the corroborating testimony, confirm that what we have here is two separate torts resulting in two different harms -- one occurring over a period of two days as a result of negligent towage of the vessel and one occurring over

6

a subsequent period of one year as a result of negligence in the care and custody of the vessel during storage. Because the essential relationship of joint tortfeasors does not exist between J.N.T. and Atlas on the one hand and the settling defendants on the other hand, J.N.T. is not entitled to any settlement credit.

Additionally, a nonsettling defendant is not entitled to a settlement credit unless it has been held liable for damages attributable to the conduct of the settling tortfeasor. The district court did not hold J.N.T. and Atlas liable for damages sustained while the NEW ORLEANS was stored at Douglas Marine. At trial, the court repeatedly limited the evidence to damage sustained during towing, asking each witness to confirm that the damages discussed related only to that incident. The court subtracted certain amounts from the alleged damages, including $30,000 for damage to tools and equipment based on evidence that these items were dry and not water damaged immediately after the tow. Significantly, at a post-trial hearing the court recollected that it had found "only the damages occasioned by J.N.T. and Atlas."

It is true that Webster's original 1985 estimate of the monetary damages to the NEW ORLEANS was significantly lower than both his revised estimate and the damages actually awarded. However, it is also true that his 1986 estimate, conducted after subsequent water damage at Douglas Marine, is much higher than the damages actually awarded. Webster testified that the list of items damaged and costs for repair tendered as evidence in this action

7

included only items damaged as a result of the negligent towage which he discovered in his November 1985 survey. The items he included on his list were independently substantiated as being items damaged during the tow by both the master of the tug and the Kenner field service technician who inspected the vessel on the day it arrived at Douglas marine.

We find that the trial court made an implicit, if not explicit, finding that this case involved two separate torts which caused two distinct harms and tried the case accordingly. Based on our review of the briefs and the record, we agree that J.N.T. was not a joint tortfeasor with the settling defendants with respect to the casualty tried, and that no joint damages were awarded by the trial court. Because we believe that the trial court correctly refused to credit J.N.T. and Atlas for the amount paid in settlement of the damages incurred while the vessel was stored at Douglas Marine, we affirm.

IV.

Although the court did not modify its judgment by assigning settlement credit, the court did reduce the award based on the $10,000 deductible contained in J.N.T.'s insurance policy. Kenner Marine and Power Systems do not contest the validity of this provision or its legal effect; they maintain that J.N.T. waived this claim by presenting it only after trial. Kenner Marine and Power Systems, however, cannot appeal this issue because they have not filed a notice of appeal. In addition, J.N.T. could not have waived the deductible argument because the deductible had been

8

stipulated into evidence.  Because the insurance policy had already been brought into evidence, and Kenner Marine and Power Systems had not alleged that the deductible clause was inapplicable, the court did not err in granting a remittitur in the amount of the deductible.

The decision of the district court is AFFIRMED.